It is ordered that summary judgment be entered in favor of the defendants.

**VIETNAM VETERANS AGAINST THE WAR et al., Plaintiffs,**

v.

**Rogers C. B. MORTON et al., Defendants.**

**Civ. A. No. 710–74.**

United States District Court, District of Columbia.

June 28, 1974.

Leonard H. Becker, Arnold & Porter, Washington, D. C., for plaintiffs.

Earl J. Silbert, U. S. Atty., Arnold T. Aikens, Derek I. Meier, Gil Zimmerman, Asst. U. S. Attys., for defendants.

Ralph J. Temple, American Civil Liberties Union Fund and American Civil Liberties Union Fund of the National Capital Area, Washington, D. C., for amicus curiae.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### INTRODUCTION AND RELIEF REQUESTED

The Plaintiffs seek injunctive and declaratory relief to enjoin the Defendants from withholding a permit to establish a symbolic campsite on the Mall as part of their proposed demonstration activities scheduled for 8 a. m. on June 30, 1974 through midnight on July 4, 1974 for approximately 1,000 people. The part of the Mall area to be used is located at the southeast corner of 4th Street N.W. and Washington Drive, N.W., in the District of Columbia.

The Plaintiffs' application was dated March 4, 1974, and by letter dated May 1, 1974, the Director of the National Capital Parks, National Park Service (NPS), Department of the Interior, granted Plaintiffs' application, in part, permitting "public gathering activities" under 36 C.F.R. § 50.19, but also and at the same time under 36 C.F.R. § 50.27 denied Plaintiffs' request to use the Mall area for camping purposes, saying in relevant part that "camping is permitted only in areas designated by the Superintendent . . ." 36 C.F.R. § 50.27(a).

The pleadings and record before the Court indicate that the Plaintiffs seek the particular Mall location as "an inseparable part of their First Amendment Activity" and the "undeniably dramatic impact of a veterans' encampment at the foot of the Nation's Capitol". The Plaintiffs did the same thing in April 1971 at the easterly end of the Mall, and they allege that this previous experience as well as that of others es-

tablishes the symbolic nature and significance of the proposed campsite as a demonstration activity, and "its indispensable value in focusing attention on the substantive issues the Vietnam Veterans seek to publicize."

The Court has before it Cross-Motions for Summary Judgment as well as Plaintiffs' Motion for a Preliminary Injunction. Since there is no dispute as to a material fact, the Court finds this matter may be disposed of by a ruling on the parties' Summary Judgment Motions. After full consideration of the pleadings herein, as well as the oral argument of all counsel and the Amicus Curiae, the Court finds the Plaintiffs are entitled to maintain their "symbolic campsite" on a 24-hour basis for the four days specified in their "public gathering" permit.

## I.

THE GOVERNMENT HAS A SPECIAL OBLIGATION TO MAINTAIN THE PUBLIC PARK AREAS IN WASHINGTON, D.C. FOR PUBLIC DISCUSSIONS IN ORDER TO SAFEGUARD THE GUARANTEED RIGHT OF PUBLIC ASSEMBLY

 Freedom of expression has a preferred position in our society. The First Amendment right of access to public places for expression of one's views, subject of course to reasonable regulations narrowly drawn to protect other competing interests, is a basic principle of our constitutional jurisprudence. *E. g.* Shuttlesworth v. Birmingham, 394 U. S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); Gregory v. Chicago, 394 U.S. 111, 89 S.Ct. 946, 22 L.Ed.2d 134 (1969); Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); Niemotko v. Maryland, 340 U.S. 268, 71

S.Ct. 325, 95 L.Ed. 267 (1951); Hague v. C. I. O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939). In effect, the public parks are held in trust for the public to use to assemble to communicate their thoughts to other citizens to debate public issues, and to petition their government for redress of grievances. *Hague, supra,* at 515, 59 S.Ct. 954.

In this city especially, free access to the public parks, particularly those located adjacent to government buildings, is of paramount importance. This is the seat of the national government, the center of national political power. Those seeking to petition their government for the redress of their grievances must come to this city. A protest or demonstration in the Nation's Capital brings an issue into national focus, and brings the problem to the collective attention of the country's highest lawmakers.

 The Court is mindful that non-speech elements of public assembly and free expression can be legitimately regulated. However, due to the preferred position of these freedoms, the legitimacy of incidental limitations thereupon rests on whether the regulation is justified.[1] United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). More specifically, if the regulation acts as a prior restraint on the First Amendment freedom by requiring a permit, again, due to the preferred position of the freedom, the regulation must be narrowly drawn with definite standards to guide the licensing authority. *Shuttlesworth, supra; Cox, supra; Hague, supra.*

In light of the fact that public areas within the city are unique forums for the expression of ideas, the Court has considered the central issue in this case, namely, whether the Plaintiffs' right of access to the Mall to exercise their right

---

1. The regulation must meet the O'Brien test: Whether the regulation is within the Constitutional power of the government, whether it furthers an important or substantial government interest; whether the governmental interest is unrelated to the suppression of free expression and whether the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of the government's interest. United States v. O'Brien, 391 U.S. 367, 376–377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

of freedom of expression has been limited by a justifiable permit regulation narrowly drawn and applied to protect other competing interests. The Court finds the Plaintiffs' rights have been unconstitutionally infringed upon for the following reasons.

## II.

### THE PROPOSED SYMBOLIC CAMPSITE IS EXRESSIVE CONDUCT PROTECTED BY FIRST AMENDMENT GUARANTEES OF FREE SPEECH AND THE RIGHT TO PUBLIC ASSEMBLY

The Supreme Court of the United States has held in several instances that there are many forms of conduct which are so closely related to the communication of ideas such as parading, leafleteering, and picketing, that they enjoy the protection of the First Amendment guarantees of free speech and assembly. E. g., Niemotko, supra; Schneider v. State, 308 U.S. 147, 60 S.Ct. 146, 84 L. Ed. 155 (1939); Lovell v. City of Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938).

This Court is compelled to concur that the Plaintiffs' proposed nighttime activity within the framework of this demonstration is expressive conduct falling within the protection of the First Amendment. The Plaintiffs have sought access to a limited area of the Mall for four days on a 24-hour basis. The round-the-clock vigil at the foot of the Nation's Capitol would constitute both a forum for the expression of the Plaintiffs' views, and a focus for the public's awareness of these views. Upon review of the permit application, it appears that the campsite area will be a central disbursement point for contingents of the group's advocate, as well as a symbol of the group's presence and reminder of its views. At night the site will continue to provide an accessible, central point for the interchange of views between the general public and the veterans.

Practically speaking, it cannot be overlooked that the 1971 encampment, in its central location on the Mall, was able to attract considerable media attention which is indispensable to the effective dissemination of the veterans' viewpoints. Furthermore, it is patently obvious that a required nightly abandonment of the campsite will significantly disrupt the continuity and flow of the Plaintiffs' message, to say nothing of the practical sabotage of the Plaintiffs' concerted efforts to maintain the four-day vigil.

In determining whether the laying down of bedrolls and the sleeping aspects of the Plaintiffs' proposed nighttime activities fall within the protections of the First Amendment, the Court considered the primary purpose of the activity and the manner in which it will be conducted. The proposed activity will maintain a peaceful, constant, singular symbol of the group, its goals and needs, within the view of the nation's lawmakers. The activity will be conducted in a manner which protects the rights of others to future enjoyment of the parks; namely, without breaking ground, building fires, cooking, or pitching tents. In fact, the Court is unable to distinguish the contemplated activity from that of the constitutionally protected silent sit-downs and lie-ins used by Civil Rights demonstrators in the '60's. See, Edwards v. South Carolina, 372 U. S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963). The Court finds the proposed activity has a sufficient nexus to the purpose of the demonstration and is of such a peaceful nature insuring the protection of other's interests, that it merits the protections provided for expressive conduct as guaranteed by the First Amendment.

## III.

### THE HODGEPODGE OF OVERLAPPING, VAGUE AND BROAD REGULATIONS CONSTITUTE AN UNCONSTITUTIONAL PRIOR RESTRAINT ON THE PLAINTIFFS' FREEDOM OF EXPRESSION

The Defendants maintain they are entitled to summary judgment. They

argue that the denial of the permit for the nighttime activities on camping grounds was a legitimate discretionary decision pursuant to regulations which are "facially legitimate and bona fide". To support the non-reviewability of this decision, they cite Zemel v. Rusk, 381 U.S. 1, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1964) and Kleindienst v. Mandel, 408 U.S. 753, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972). Not only does the Defendants' characterization of the issue miss the mark, but the rulings relied upon cases which are inapplicable here. In the instant case, the Court is not faced with the Zemel or Kleindienst problem regarding the application of long-standing plenary governmental power type regulations governing immigration and the issuance of visas; and which, tangentially, affects considerations of First Amendment freedoms.

 Here, the Court's foremost concern is that this demonstration of free expression and symbolic petition for redress of grievances be limited incident only to constitutional regulations. At the expense of being repetitious, a regulation which will limit the exercise of these freedoms, by requiring prior approval of activity by governmental authorities, must be narrowly drawn with definite standards to guide the licensing authority. *Shuttlesworth, supra; Cox, supra; Hague, supra.* When a regulation does not meet with this exacting requirement, it is not "facially legitimate and bona fide". The Court has full authority to examine the regulation and invalidate it as an unconstitutional prior restraint on the Plaintiffs' First Amendment freedoms. Women Strike for Peace v. Morton, 153 U.S.App.D.C. 198, 472 F.2d 1273 (1972).

Upon examining the regulations involved in this action, the Court finds a hodgepodge of overlapping, imprecise and ill-defined regulations, which are also inconsistent and unduly vague. Also, the regulations provide no sufficient definitions of prohibited activity, and the regulations provide no so-called standards to govern the Superintendent's decision to waive the prohibitions in the public parks.

The regulations involved are 36 C.F.R. § ·50.19 pertaining to "Public Gatherings",[2] and 36 C.F.R. § 50.17 pertaining to "Camping". The Director of NCP has approved the Plaintiffs' daytime activities under the characterization of "public gathering". He has prohibited the proposed nighttime activities which will include reclining or sleeping on bedrolls, under the characterization of "camping". The fatal flaws in the regulations on prohibiting "camping" are two-fold: (1) There is no definition of what activity constitutes prohibited "camping"; (2) Under this regulation, the Superintendent has unbridled discretion to lift the general prohibition on the undefined activity of "camping". The Court is not in a position to read a director's mind, nor should the Court or any citizen be required to when an infringement of the rights of free expression are at issue. The Court finds no consistent rationale or practice in the Director's granting of permits for nighttime activity. In the past, he has permitted groups to remain overnight in national parks (i. e., the Bonus March of 1932, Resurrection City in 1968). Furthermore, the Director permits all-night rock concerts, nighttime Fourth of July celebrations, and nighttime theatre productions at which the spectators recline on blankets and other paraphernalia. Without definition of "camping", it is impossible to distinguish the Plaintiff's proposed nighttime activities from a vigil permitted under the "public gathering" regulation or other approved activities which include reclining on the grass after dark.[3] Without the benefit of any

---

2. Public gatherings includes "but is not limited to, demonstrations, picketing, speechmaking, holding of vigils, parades, ceremonies, meetings, entertainment and all other forms of public assembly." 36 C.F.R. § 50.-19(a)(1).

3. The fact that the Plaintiffs may sleep on their blankets does not appear to affect the classification of an activity as "camping". The Defendants treat "sleeping" under a separate regulation, 36 C.F.R. § 50.25(k). The regulation permits sleeping activities in

definition, the Director has *sua sponte* defined the Plaintiffs' nighttime activities as "camping" and under the guise of what the Defendant terms facially valid and bona fide regulations can curtail the Plaintiffs' activities.

In view of the vagueness of these regulations, and the Superintendent's unbridled discretion, the conclusion the Court must reach is patently obvious. These overlapping, ill-defined and imprecise regulations give the government an unfettered license to pick and choose those causes and groups which it seeks to advance. Any regulation which permits this situation infringes upon the heart and core of freedom of expression, and are constitutionally invalid.

## IV

THE DEFENDANTS HAVE NOT MET THEIR BURDEN OF SHOWING THAT THE PROHIBITION OF THE PROPOSED CAMPSITE DURING THE NIGHTTIME HOURS FURTHERS A LEGITIMATE GOVERNMENT INTEREST

Four days ago the Supreme Court reaffirmed the use of the balancing standard when passing upon the validity of a government regulation which has the effect of restricting a prisoner's First Amendment rights. Pell v. Procunier, —— U.S. ——, 94 S.Ct. 2800, 41 L. Ed.2d 495 (decided June 24, 1974). The balancing standard involves the weighing of the government's legitimate interest in protecting society as a whole against the individual's interest in free exercise of his First Amendment rights. Although *Pell* concerns the balance of significantly different interests than those presented in the instant case, this Court takes notice of the significant attention the Supreme Court devoted to

analyzing the legitimacy and substance of the government's interest, as well as the Court's thoughtful consideration of the available alternatives which would provide the best compromise between divergent interests.

In applying the Supreme Court's methodology to the instant case, the Court finds there has been no showing of the legitimate and substantial government interest which will be furthered by denying the Plaintiffs' permission for their proposed nighttime activities and thus justify a restriction upon the Plaintiffs' right to free expression. There has been no showing of danger to the public safety or to public property by the Plaintiff's activities. The Defendants' suggested alternative locations for the nighttime activities, in Prince William Forest and near Greenbelt, Maryland, do not provide alternatives of the same caliber as those taken into consideration by the Supreme Court in *Pell.*

Thus, on the basis of this record, the Court is compelled to find that no legitimate governmental interest is furthered which can justify a refusal to permit the use of the Mall site at night as a continuing part of the Plaintiff's public gathering and demonstration. The Defendants have failed to meet their burden of proof.

## V.

### CONCLUSION

Our constitutional guarantee of freedom of expression is the keystone of our form of representative government. Any undue restriction on the free exercise of this right, be it by an arbitrary or imprecise permit regulation or a general regulation governing an insubstantial governmental interest chisels away at that keystone. It matters not against whom the restriction is applied. Once a

---

public parks for up to four hours. Beyond that, the sleeper must obtain the Superintendent's permission. The Superintendent's authority to grant such permission under this regulation amounts to unbridled discre-

tion. Be that as it may, the Defendants did not indicate any concern with the sleep activities *per se* in disallowing the proposed activities as "camping".

precedent is set it affects us all. Divested of this fundamental safeguard, we are but mere puppets of whomsoever may be in power in the Executive Branch of government. The Court sees in these park regulations, both on their face and as applied in the instant case, the seeds of erosion of this freedom, by arbitrary governmental action. Although aware of the risks involved in the free exercise of any communicative right, this Court finds the law still requires a showing of a legitimate and well-defined governmental interest to justify a restriction of a First Amendment right. *Pell, supra.* This Court will not abdicate its responsibility to protect fundamental individual liberties.

Therefore, the Court will grant the Plaintiffs' Motion for Summary Judgment and deny the Defendants' Motion for Summary Judgment. An Order of even date will be entered in accordance with this Opinion, instructing the Defendants to issue the appropriate permit as described herein.