**UNITED STATES of America**

v.

**Stacy ABNEY, Appellant.**

**Nos. 75–2072 to 75–2074, and 75–2208.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 27, 1976.

Decided May 11, 1976.

James G. Ennis,* with whom Michael E. Geltner, Washington, D. C. (appointed by this court), was on the brief, for appellant.

John L. Kern, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., and John A. Terry, William D. Pease, James M. Hanny, and David R. Ad-

---

* Entered appearance as student counsel pursuant to Rule 20 of the General Rules of this court.

dis, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before WRIGHT, McGOWAN and TAMM, Circuit Judges.

PER CURIAM:

Appellant Abney is a World War II veteran who has carried on a 30-year controversy with the Veterans Administration (VA) over disability benefits. On June 17, 1975, for perhaps the ninth time since his discharge, he came to Washington from his home in Texas to press his claim at the headquarters office of the VA adjacent to Lafayette Park. Rebuffed again, he went across the street to the park to take up a round-the-clock vigil protesting his treatment at the hands of the VA. Obviously, given appellant's concept of the purpose underlying his conduct, this necessitated sleeping in the park.[1] On August 3 and 7, September 2, and October 28 he was arrested[2] for sleeping in the park with intent to remain for more than four hours, a violation of 36 C.F.R. § 50.25(k) (1975).[3] He was convicted and sentenced to short jail terms. He now appeals, alleging infringement of his First Amendment rights. We reverse the convictions.

Since the Park Service has chosen to exercise its delegated authority by a regulation contemplating the exercise of discretion through the grant or denial of permits in individual cases, the constitutional considerations relevant to all such licensing schemes are fully operative. In the unusual circumstances here presented, Abney's sleeping must be taken to be sufficiently expressive in nature to implicate First Amendment scrutiny in the first instance.[4] Hence, we must test the regulation against the familiar standards announced in *Shuttlesworth v. Birmingham*, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969). The regulation gives the Superintendent authority to grant permission to

---

1. During at least a portion of the time here involved Abney carried picket signs announcing his grievance. When he slept he apparently stuck the signs in the ground at his feet on some occasions. At other times he wrapped them up and laid them on the ground beside him. The signs were allegedly confiscated after one of his arrests. In view of our disposition here, we see no reason for the Park Service, if in fact it has the signs, to refuse to return them to him.

2. He had been arrested at least 11 times previously, but prosecution was declined by the United States Attorney's office on those occasions. The behavior of that office and the Park Police has on the whole been exemplary. They have tried to arrange alternative lodging for Abney, although he remained steadfast in his resolve to carry on his vigil in the park, and they once arranged for a new round of negotiations between Abney and the VA.

3. The regulation provides in pertinent part:

Committing a nuisance of any kind or engaging in disorderly conduct within an area covered by this part is prohibited. The following shall include, but shall not be construed to limit acts committed in areas covered by this part which constitute disorderly and unlawful conduct.

\* \* \* \* \* \*

(k) *Loitering with intent to remain more than four hours.* Sleeping, loitering or camping, with intent to remain for a period of more than four hours in any park area, is prohibited, except upon proper authorization of the Superintendent.

A violation is punishable by up to $500 in fines and six months incarceration under 16 U.S.C. § 3 (1970).

4. The Government argues that we are foreclosed from finding the sleeping speech-related because of certain language in *Vietnam Veterans Against the War v. Morton (VVAW)*, 164 U.S. App.D.C. 391, 506 F.2d 53 (1974). We disagree. In that case a motions panel of this court summarily reversed a District Court decree which would have permitted the VVAW to camp in a certain spot on the Mall near the Capitol. Summary reversal was appropriate because the District Court's action "directly contravened the controlling precedent," *id.*, 164 U.S.App.D.C. at 393 n.6, 506 F.2d at 55 n.6, a decree of the Supreme Court issued on an expedited basis without opinion just three years before, *Morton v. A Quaker Action Group*, 402 U.S. 926, 91 S.Ct. 1398, 28 L.Ed.2d 665 (1971), involving the same location, the same facts, "the same litigants and resolving the same legal issues." 164 U.S.App.D.C. at 394, 506 F.2d at 56 (footnote omitted). That was the holding of the *VVAW* case, as set forth in the first paragraph of Part II of the opinion. On no other basis would summary reversal have been warranted. The remainder of the opinion, although entitled to careful consideration, is not binding, not being a part of the holding.

sleep in the park beyond the time limit specified, but it contains no "narrow, objective, and definite standards to guide the licensing authority," *id.* at 151, 89 S.Ct. at 938, 22 L.Ed.2d at 167, thereby to guard against the danger of arbitrary action or *de facto* censorship of certain points of view. If the *Shuttlesworth* standard of "public welfare, peace, safety, health, decency, good order, morals, or convenience" is facially unconstitutional, the totally unfettered discretion granted to the Superintendent here cannot survive constitutional challenge. *See also Niemotko v. Maryland,* 340 U.S. 268, 271–272, 71 S.Ct. 325, 327, 95 L.Ed.2d 267, 270 (1951) (permits required by custom rather than by statute).

■ Abney, through his attorney, applied for a permit under Section 50.25(k) three days before the first arrest at issue here. Not until 19 days later did he receive a reply denying the permit,[5] in a letter from the Director of the National Capital Parks—not from the Superintendent, who is the official designated in the regulation to pass on such requests. The letter indicated that such permission is never granted under Section 50.25(k), since it is Park Service policy to confine sleeping to designated camping areas. It may well be that such an across-the-board ban on sleeping outside official campgrounds would be constitutionally acceptable if duly promulgated and evenhandedly enforced. But the *post hoc* policy rationalization belatedly supplied by the Director cannot be thought to provide the necessary binding standards where the regulation has none. *Cf. Shuttlesworth v. Birmingham, supra,* 394 U.S. at 153, 89 S.Ct. at 940, 22 L.Ed.2d at 168. (Alabama Supreme Court's "remarkable job of plastic surgery" in narrowly construing the Birmingham ordinance long after Shuttlesworth's arrest found insufficient to validate the conviction).

The regulation as applied in this case contravenes the First Amendment.

*Reversed.*

---

**5.** This 19-day delay runs afoul of principles announced in *A Quaker Action Group v. Morton,* 170 U.S.App.D.C. 124, 142, 516 F.2d 717, 735 (1975) (a fixed deadline for administrative action on an application for a permit "is an essential feature of a permit system"; 24 hours suggested as maximum time for action; permit to be deemed granted if no action is forthcoming within the time limit). *See Shuttlesworth v. Birmingham,* 394 U.S. 147, 162–164, 89 S.Ct. 935, 944–945, 22 L.Ed.2d 162, 173–175. (Harlan, J., concurring).