## COMMUNITY FOR CREATIVE NON–VIOLENCE, et al.

v.

James G. WATT, Secretary of Interior, et al., Appellants.

No. 81–2381.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 15, 1982.

Decided Jan. 22, 1982.

Rehearing En Banc Denied Jan. 25, 1982.

Robert Craig Lawrence, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., Royce C. Lamberth, Kenneth M. Raisler, Asst. U. S. Attys., and Dianne Kelly, Atty., Dept. of Interior, Washington, D. C., were on the brief for appellants.

Ralph S. Tyler, Washington, D. C., with whom Ilene J. Jacobs and Arthur B. Spitzer, Washington, D. C., were on the brief, for appellees.

Before ROBINSON, Chief Judge, and WALD and EDWARDS, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM:

This case comes to us on appeal from an order of the District Court granting in part the appellees' motion for summary judgment. The appellees are the Community for Creative Non-Violence ("CCNV"), an unincorporated religious association working on behalf of homeless persons, and ten named individuals.[1] In the fall of 1981, the appellees applied to the Department of the Interior, National Park Service, for a permit to hold a demonstration in Lafayette Park, across Pennsylvania Avenue from the White House, from November 26, 1981 through March 20, 1982, as a means of calling attention to the plight of homeless persons.[2] The application indicated that CCNV would provide the demonstration participants with shelter, in the form of tents, sleeping bags and blankets; meals, either in its drop-in centers or in the Park; and all necessary sanitation facilities.[3] By letter dated September 30, 1981, the Park Service denied this application, citing 36 C.F.R. § 50.27.[4] That Park Service regulation restricts "camping" to areas designated by the Superintendent of National Capital Parks.[5] Lafayette Park is admittedly not so designated.

Following receipt of this denial, the appellees filed suit in the District Court seeking to enjoin the National Park Service from denying them permission to demon-

---

1. Complaint ¶ 3, *Community for Creative Non-Violence v. Watt*, Civ. No. 81–2844 (D.D.C. Dec. 23, 1981) [hereinafter cited as Complaint], *reprinted in* Joint Appendix ("Jt. App.") at 7–8. The individual plaintiffs include members of CCNV and homeless persons in the Washington, D.C. area. *Id.* ¶¶ 4–6, Jt.App. at 8.

2. *Id.*, Exhibit A, Jt.App. at 14–16.

3. *Id.*

4. *Id.*, Exhibit B, Jt.App. at 17.

5. 36 C.F.R. § 50.27 (1980).

strate in the manner sought,[6] and moved for a preliminary injunction.[7] By order dated November 25, 1981, the District Court denied this motion.[8]

On November 30, the National Park Service granted the appellees a permit for a seven-day demonstration in Lafayette Park.[9] This permit excluded any use of the area for camping or living accommodations, but did provide for the erection of nine "symbolic" tents.[10] Apparently, permission for this latter activity was granted pursuant to 36 C.F.R. § 50.19(e)(8), which provides that "[i]n connection with permitted demonstrations or special events, temporary structures . . . shall be permitted." [11]

On December 17, the appellees moved in the District Court for summary judgment on their complaint and for entry of a permanent injunction.[12] In response the Government moved for summary judgment or dismissal.[13] The District Court, following arguments, denied the Government's motion and granted the appellees' motion in part.[14] The District Court order provided that:

> Plaintiffs are entitled to sleep in the nine (9) tents which plaintiffs have placed in Lafayette Park pursuant to a valid permit issued by defendants. Plaintiffs are not entitled to engage in "camping activities," such as the preparation or service of food in Lafayette Park. . . .[15]

The District Court stayed the judgment and injunction pending the Government's appeal to this court.[16]

The appellees have not challenged that portion of the District Court order prohibiting them from engaging in camping activities such as the preparation or service of food; we are thus concerned only with the appellees' ability to sleep in the nine tents during the course of their demonstration. At oral argument before this court, counsel for the Government acknowledged that Park Service regulations do not prohibit sleeping *per se.* Counsel also admitted that the appellees are not prohibited from maintaining a continuous presence in and around

6. Complaint, Jt.App. at 6–18.

7. Motion for Preliminary Injunction, *Community for Creative Non-Violence v. Watt, supra* note 1, Jt.App. at 24–25.

8. *Community for Creative Non-Violence v. Watt,* Civ. No. 81–2844 (D.D.C. Nov. 25, 1981) (order denying plaintiffs' motion), Jt.App. at 73. Plaintiffs noticed an appeal of this order and moved in this court for an injunction pending appeal. The motion was denied on December 1, 1981. *Community for Creative Non-Violence v. Watt,* No. 81–2246 (D.C.Cir. Dec. 1, 1981), Jt.App. at 74. Subsequently, on December 22, that appeal was dismissed under Fed.R.App.P. 42(b) on the unopposed motion of the plaintiffs. Record, entry 29.

9. This permit may be renewed for an indefinite number of seven-day periods. *See* 36 C.F.R. § 50.19(e)(5)(i) (1980). It has been renewed weekly since the protest began, and the appellees represent that they intend to seek renewals through March 20, 1982, the last day of winter. Complaint, Exhibit A, Jt.App. at 15.

10. United States Department of the Interior, National Park Service, Public Gathering Permit No. 81–966, Jt.App. at 83–85. In addition, the permit allows the appellees to erect one small symbolic tombstone, a number of small symbolic crosses and two 4′ × 4′ signs. *Id.* The appellees have dubbed their nine symbolic tents "Reaganville" and have erected 47 crosses commemorating the homeless persons "who have frozen to death in recent winters in the District of Columbia." Transcript of December 18, 1981 Hearing at 7, 33, 41–43, Jt.App. at 202, 228, 236–38.

11. 36 C.F.R. § 50.19(e)(8) (1980), *as amended by* 46 Fed.Reg. 55,959, 55,963 (Nov. 13, 1981). This regulation was apparently adopted in response to this court's decision in *Women Strike for Peace v. Morton,* 153 U.S.App.D.C. 198, 199, 472 F.2d 1273, 1274 (1972), in which a total ban on the erection of structures incidental to a permissible demonstration under § 50.-19 was invalidated. *See also* 46 Fed.Reg. 55,-959, 55,961 (Nov. 13, 1981) (Administrative Policy Statement).

12. Plaintiffs' Motion for Summary Judgment, Record, entry 23.

13. Defendants' Motion to Dismiss or for Summary Judgment, Record, entry 25.

14. *Community for Creative Non-Violence v. Watt,* Civ. No. 81–2844 (D.D.C. Dec. 23, 1981), Jt.App. at 313–14.

15. *Id.,* Jt.App. at 313.

16. *Id.,* Jt.App. at 313–14.

the symbolic tents now standing in the Park, or from placing either cots or blankets inside those tents. Indeed, as counsel for the Government also conceded, the appellees may, without violating any regulations, lie down on a cot or blanket inside a tent; they simply may not fall asleep. Thus, the issue presented for resolution is necessarily narrow. We need only decide whether the Park Service regulations prohibiting camping in all but designated areas [17] properly encompass the sleeping activities proposed by the appellees.

■ Only two months ago, the National Park Service issued amendments to its regulations governing demonstrations and special events in and around Washington, D.C., and an Administrative Policy Statement interpreting those regulations.[18] In construing the Park Service's regulations, we are guided by the principle that a court will not pass upon the constitutionality of a statute or a regulation if a construction is fairly possible by which the question may be avoided.[19] We need not strain to find that saving construction here, because we believe that the Park Service's regulations plainly allow the appellees to sleep in the tents as an intrinsic part of their protest against governmental policies which they allege contribute to their lack of shelter.

■ It is axiomatic that an agency is bound by its own rules and policies.[20] Moreover, in interpreting an agency's regulations, a court may rely upon the agency's contemporaneously issued Policy Statement as an accurate representation of the agency's intent.[21] In this case, the National Park Service's Administrative Policy Statement accompanying the changes to 36 C.F.R. § 50.19 was in fact "intended . . . to clarify and simplify the regulatory system." [22] The Policy Statement describes the scope of section 50.19(e)(8) as follows:

Camping is prohibited in all park areas except those specially designated as official campsites (36 CFR 50.27). *The National Park Service does permit the use of symbolic campsites reasonably related to First Amendment activities. However, camping primarily for living accommodation must be confined to designated campsites.*[23]

This Policy Statement, likely reflecting the Park Service's view of what is required by the First Amendment, makes a clear distinction between "the use of symbolic campsites reasonably related to First Amendment activities" and "camping primarily for living accommodation."

■ We have no doubt as to which category encompasses the activities in question here. First, the appellees are engaged in a political protest and a petition for redress of grievances. As part of their protest, the appellees desire permission to sleep in their tents in Lafayette Park. This appears to be no more than "the *use* of [a] symbolic campsite[]." [24] Moreover, as the District Court found,[25] in this case sleeping itself may

---

17. *See* 36 C.F.R. § 50.27(a) (1980).

18. 36 C.F.R. § 50.19 (1980), *as amended by* 46 Fed.Reg. 55,969 (Nov. 13, 1981).

19. *See, e.g., United States v. Clark*, 445 U.S. 23, 27, 100 S.Ct. 895, 899, 63 L.Ed.2d 171 (1980); *Crowell v. Benson*, 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932).

20. *E.g., Arizona Grocery Co. v. Atchison, T. & S. F. Ry.*, 284 U.S. 370, 389, 52 S.Ct. 183, 186, 76 L.Ed. 348 (1932); *Gardner v. FCC*, 174 U.S. App.D.C. 234, 237, 530 F.2d 1086, 1089 (1976).

21. *See, e.g., Environmental Defense Fund, Inc. v. EPA*, 205 U.S.App.D.C. 139, 152, 636 F.2d 1267, 1280 (1980).

22. 46 Fed.Reg. 55,959, 55,959 (Nov. 13, 1981).

23. *Id.* at 55,961 (emphasis added).

24. We note that the Park Service's Administrative Policy Statement refers to "the *use* of symbolic campsites" rather than to the erection of such campsites. Similarly, at oral argument counsel for the Government saw no distinction between "symbolic campsites" and "symbolic camping." Thus, we find that the agency has acted in a manner inconsistent with its own interpretation of its regulations.

25. Transcript of December 22, 1981 Hearing at 25, Jt.App. at 308 (District Court finding of fact).

express the message that these persons are homeless and so have nowhere else to go.[26]

Second, there is no evidence in the Record suggesting that the handful of tents in Lafayette Park is intended "primarily for living accommodation." The appellees will not prepare or serve food there; they will not build fires or break ground; they will not establish sanitary or medical facilities. Indeed, the uncontroverted evidence in the case is that the purpose of the symbolic campsite in Lafayette Park is "primarily" to express the protesters' message and not to serve as a temporary solution to the problems of homeless persons.[27] Thus, the only activity at issue here—sleeping in already erected symbolic tents—cannot be considered "camping" proscribed by 36 C.F.R. § 50.27.

For the foregoing reasons, we find it clear from the Record before us and from the National Park Service's Administrative Policy Statement that these protesters may lawfully sleep in their symbolic campsite. That conclusion necessarily follows from the National Park Service's interpretation of its own regulations.[28] On this basis, the order of the District Court is

*Affirmed.*

Before ROBINSON, Chief Judge, and WRIGHT, TAMM, MacKINNON, ROBB, WILKEY, WALD, MIKVA, EDWARDS and GINSBURG, Circuit Judges.

ORDER

PER CURIAM.

A member of the Court has *sua sponte* suggested consideration of this case by the *en banc* Court. A majority of the Court has indicated they are not in favor of such consideration.

MacKINNON, ROBB and WILKEY, Circuit Judges, would have this matter considered by the *en banc* Court for the reasons set forth in the attached memorandum.

MEMORANDUM

MacKINNON, Circuit Judge.

I vote to *en banc* this case and vote for summary reversal because it violates established precedent. *Morton v. Quaker Action Group*, 402 U.S. 926, 91 S.Ct. 1398, 28 L.Ed.2d 665 (1971).

What appears in the court's decision to be a limited holding to enable demonstrators to "sleep[ ] in already erected *symbolic* tents" for a limited period of time in reality extends to the appellants a defeasible right to indefinite occupancy at Lafayette Park. Although not readily apparent from a casual reading of the court's memorandum, *Community for Creative Non-Violence v. Watt*, 670 F.2d 1213 (D.C. Cir. 1982) [hereinafter *Memo.* at 1217.], the court has reached this result by ignoring the controlling precedent on point and by manipulating a National Park Service policy statement to support its conclusion. This decision opens the door for virtually any group

---

**26.** The Government contends that sleeping can never be a form of expressive conduct, relying on this court's decision in *Vietnam Veterans Against the War v. Morton*, 164 U.S.App.D.C. 391, 506 F.2d 53 (1974) (per curiam). *See* Brief of Appellants at 6–11. We note, however, that that portion of *Vietnam Veterans Against the War* was viewed as non-binding dictum by this court's subsequent decision in *United States v. Abney*, 175 U.S.App.D.C. 247, 534 F.2d 984 (1976) (per curiam). *Abney* held that in some circumstances sleeping can be "sufficiently expressive in nature to implicate First Amendment" concerns. *Id.* at 248 & n.4, 534 F.2d at 985 & n.4.

**27.** *E.g.*, Complaint ¶ 13, Jt.App. at 9–10; Transcript of December 18, 1981 Hearing at 50–51,

Jt.App. at 245–46; Transcript of December 22, 1981 Hearing at 21, 25, Jt.App. at 304, 308 (District Court findings of fact).

**28.** Because the case can be decided on the basis of the Park Service's regulations, we have no occasion to evaluate the substantiality of the governmental interest or to "balance" that interest against the expressive content of the appellees' conduct. Similarly, we do not express a view as to whether sleeping must be permitted when it is merely incidental to a group's "round-the-clock vigil" but has no expressive content of its own. *Cf. United States v. Abney*, 175 U.S.App.D.C. 247, 534 F.2d 984 (1976) (round-the-clock vigil of single protester implicated First Amendment interests).

of demonstrators in presumed furtherance of First Amendment rights to convert national monuments, symbols, and grounds into sites for sleeping accommodations of indefinite duration.

This is not a case of first impression in this circuit. At least twice before this court has interpreted regulation 36 C.F.R. § 50.-27(a)[1] which prohibits camping in areas not designated for such use by the Superintendent of National Capital Parks. In 1971 the Department of Justice obtained an injunction against the Vietnam Veterans Against the War, prohibiting them from establishing a base camp on the Mall in connection with a proposed upcoming demonstration. *Vietnam Veterans Against the War, Etc. v. Morton*, 506 F.2d 53, 56 n.9 (D.C.Cir.1974). The district court's order there defined the terms "overnight camping" and "campsite" as "*sleeping activities, or making preparations to sleep* (including the laying down of bedrolls or other bedding), *or* making any fire, *erecting any shelter, tent or other sleeping accommodation structure, or* doing any digging or earth breaking, or carrying on any cooking activities. *Id.* (emphasis added) After argument on the Veterans' motion for summary reversal, this court modified the district court's order to permit the Veterans to use their demonstration campsite "for the purpose of sleeping in their own equipment, such as sleeping bags, on that portion of the Mall." *Id.* The following day, Chief Justice Burger, as Circuit Justice for this circuit, vacated this court's order and reinstated the district court's prohibitory injunction. *Id. The next day, the full Supreme Court upheld the Chief Justice, vacating this court's order which permitted sleeping and reinstating "with full force and effect" the injunction of the district court.* *Morton v. Quaker Action Group*, 402 U.S. 926, 91 S.Ct. 1398, 28 L.Ed.2d 665 (1971) (Justice Douglas not participating);[2] *Vietnam Veterans, supra,* 506 F.2d at 56 n.9. The Supreme Court's ruling controls this case.

Three years later in 1974 the Vietnam Veterans Against the War/Winter Soldiers Organization filed suit in the local federal district court to enjoin the Superintendent of National Capital Parks from withholding from them a permit to establish a "symbolic campsite" on the Mall as part of an upcoming demonstration. On cross motions for summary judgment, the district court granted the Veterans' motion and ordered the Superintendent to allow the Veterans to *encamp* around the clock for a four-day period. On the same day the government moved this court for summary reversal of the district court's order. This court granted summary reversal of the district court's

---

1. 36 C.F.R. § 50.27(a) (1980) provides:
    Camping is permitted only in areas designated by the Superintendent who may establish limitations of time allowed for camping in any public camping ground. Upon the posting of such limitation in the campground, no person shall camp for a period longer than that specified for the particular campground.

2. The Supreme Court's order stated in full:
    April 21, 1971
    *Miscellaneous Order*
    No. _____. *Morton, Secretary of the Interior v. Quaker Action Group et al.* Upon consideration of the ·application of the Solicitor General of the United States for a stay herein and the opposition to such stay on behalf of the respondents presented to The Chief Justice as Circuit Justice for the District of Columbia Circuit at 6 p.m. on April 20, 1971, The Chief Justice entered an order, dated April 20, 1971, vacating the order of the United States Court of Appeals, dated April 19, 1971, which modified the prelimi-

nary injunction issued on April 16, 1971, by the United States District Court for the District of Columbia and reinstated the said order of the District Court, dated April 16, 1971, pending further order of the Court; and said matter being referred by The Chief Justice to the Court and the Court having considered the matter,
    It is ordered
    (1) that the Order of the United States Court of Appeals for the District of Columbia Circuit, dated April 19, 1971, modifying the preliminary injunction issued by the United States District Court for the District of Columbia on April 16, 1971, is vacated;
    (2) that the preliminary injunction issued by the United States District Court herein on April 16, 1971, is reinstated with full force and effect.
    Mr. Justice Douglas took no part in the consideration of this matter.
    402 U.S. 926, 91 S.Ct. 1398, 28 L.Ed.2d 665 (1971).

order on the specific ground that it violated the Supreme Court's 1971 decision concerning the same litigants and the same legal issues. This court held:

> By its order of 21 June 1971, reinstating (after a reversal by this court) District Judge Hart's injunction forbidding the VVAW from camping on the same part of the Mall, the Supreme Court accepted the finding of Judge Hart that *overnight camping was not activity within the purview of the First Amendment and that the blanket ban on camping in nondesignated areas was a reasonable exercise of supervisory authority over the public parkland.* We are bound by that determination. Since appellees herein seek nothing beyond that which the Supreme Court denied them in 1971, the appellant Government officials are entitled to summary judgment on remand.

*Vietnam Veterans, supra,* 506 F.2d at 53, 56 (footnote omitted).

One of the legal issues involved in the district court's 1974 order was the granting of permission for "the laying down of bedrolls and the sleeping aspects of the plaintiffs' [i.e. the Veterans'] proposed nighttime activities ... .without breaking ground, building fires, cooking, or pitching tents." *Vietnam Veterans Against the War v. Morton,* 379 F.Supp. 9, 12 (D.D.C.1974). As was the case with the district court's 1974 order, the order of the district court here attempts somehow to distinguish *sleeping* from *camping* so as to permit *overnight sleeping* while not running afoul of the clear pronouncement of this court and the Supreme Court in the *Vietnam Veterans* cases:

> Again, the Court emphasizes that what it is permitting is not camping; it is permission and a declaratory judgment to use the facilities now permitted by the Park Service [i.e. tents] *for sleeping accommodations and no more.*

> .    .    .    .    .

> This declaration by this court is not at variance with the decision of the Court of Appeals in Vietnam War Veterans v. Morton, nor any pronouncement of the Supreme Court of the United States, including Morton v. Quaker Action Group, insofar as this court is aware. Otherwise, it would not do what it declared it will do and about which there can be no reasonable dispute as to any material fact.

(A. 307, 308.) (emphasis added); *See The Community for Creative Non-Violence v. Watt,* No. 81–2844 (D.D.C. Dec. 23, 1981) (A. 313–14). This attempt to distinguish our prior decisions cannot be supported because sleeping in a tent is "camping."

The factual similarities among the cases in 1971, 1974 and now are striking. In all cases the demonstrators sought permission to *sleep* in areas not designated by the Superintendent as official campsites. They claim the same nexus between overnight sleeping and the underlying purposes of their demonstrations. The wording of 36 C.F.R. § 50.27(a) has remained unchanged in the intervening years. Thus, given essentially the same factual setting how can a different result be reached? The legal question presented here is precisely the same one addressed by earlier courts, especially in *Quaker Action Group, supra*—mention of which is conspicuously absent in the court's memorandum decision here—: "[W]hether the Park Service regulations prohibiting camping in all but designated areas properly encompass the sleeping activities proposed by the appellees." *Memo.* at 1216.

Faced with the unchanged language of the regulation prohibiting camping in nondesignated areas and the binding judicial precedents upholding it, the court was hard put to find some new imaginative basis for its decision to separate overnight sleeping from camping. The court claims that its decision can be supported by a recently issued National Park Service Administrative Policy Statement (Policy Statement) which accompanied amendments to the Service's regulations governing demonstrations and special events in and around Washington, D.C., 36 C.F.R. § 50.19 (1980), *as amended* 46 Fed.Reg. 55,959 (Nov. 13, 1981). The court claims that the Policy Statement supports its construction of the Service's regulations. *Memo.* at 1216.

The crucial language from the Policy Statement is as follows:

Camping is prohibited in all park areas except those specially designated as official campsites (36 CFR 50.27). The National Park Service does permit the use of symbolic campsites reasonably related to First Amendment activities. However, camping primarily for living accommodation must be confined to designated campsites.

46 Fed.Reg. 55,961 (Nov. 13, 1981). The court asserts that this brief excerpt makes "a clear distinction" between "the use of symbolic campsites reasonably related to First Amendment activities" (allowed in all park areas) and "camping primarily for living accommodation" (confined to designated campsites). Seizing upon this latter phrase "primarily for living accommodation" the court by inference concludes that mere *sleeping* in tents does not amount to occupancy of the area "primarily for living accommodation" because no food is served or prepared, no fires are built, no ground is broken, and no sanitary or medical facilities are established. *Memo* at 1217. This is directly contrary to the specific provisions of the regulations.

If the statement "camping primarily for living accommodation must be confined to designated campsites" were the only expression available on the question of whether "camping" encompasses "sleeping," then the court's inference might be reasonable. But it is not. The fact is that the court's interpretation blatantly ignores (1) precedent of the Supreme Court and this court to the contrary, (2) *the plain language of the Service's regulations,* and (3) other pertinent portions of the Service's Policy Statement. When appropriate consideration is given to these weightier sources of authority, the court's conclusion allowing demonstrators to sleep in tents in areas not designated as official campsites emerges as an unsound construction.

This court in *Quaker Action Group, supra,* and the district court in *Vietnam Veterans, supra,* 379 F.Supp. 9, attempted to circumvent the regulatory ban against camping in areas not designated as official campsites by ordering that at least *overnight sleeping* be allowed. As is the case here, the veterans group in those two cases attempted to articulate a nexus between their request for overnight camping and the purposes underlying their demonstrations. The decision of the Supreme Court in the former case and this court in the latter case specifically rejected those interpretations and made the ban against camping a *complete* one that *specifically prohibited overnight sleeping.*

The language of 36 C.F.R. § 50.27(a) clearly states that camping is permitted only in designated campsites. There is no indication whatever in that specific, affirmative declaration that overnight sleeping in tents does not fall within the meaning of "camping." Indeed the common understanding of the word and the district court definition which was reinstated "with full force and effect" by the Supreme Court in *Quaker Action Group, supra, (see Vietnam Veterans, supra,* 506 F.2d at 59) leave no doubt that *"camping" includes overnight sleeping.*

The Service's Administrative Policy Statement reiterates that "[c]amping is prohibited in all park areas except those specially designated as official campsites." 46 Fed.Reg. 55,961 (Nov. 13, 1981) (emphasis added). That is a flat prohibition. The next sentence indicates that the Service "does permit the use of *symbolic campsites* reasonably related to First Amendment activities." *Id.* (emphasis added) The court pays little attention to the term "symbolic campsite."[3] In common parlance, a *symbolic* campsite is distinguished from an *actual* campsite by the fact that the latter is

---

**3.** In one footnote the court did state:

We note that the Park Service's Administrative Policy Statement refers to "the *use* of symbolic campsites" rather than to the erection of such campsites. Similarly, at oral argument counsel for the Government saw

no distinction between "symbolic campsites" and "symbolic camping." Thus, we find that the agency has acted in a manner inconsistent with its own interpretation of its regulations.

*Memo.* at 1216 n.24.

actually occupied and used for overnight sleeping (or by *possibly* cooking, or eating, or ground breaking, or fire building and so forth). In contrast a *symbolic campsite* is only erected to give the appearance of occupancy. If the campsite were for actual occupancy it would cease to be symbolic in the sense intended by the regulations. In short, the court's construction has the effect of reading the word "symbolic" completely out of the Service's policy statement.

It is significant that the Service's statement about permissible "symbolic campsites" is immediately preceded by a reference to 36 C.F.R. § 50.19(e)(8) which permits structures to be used in the conduct of demonstrations and special events. The Service "permits all groups to *erect* structures, props and displays" as used in connection with government-sponsored events. 46 Fed.Reg. 55,961 (Nov. 13, 1981). When plaintiffs/appellees originally applied for a demonstration permit on November 30, 1981, they specifically proposed the "*erection of symbolic* tents to focus on the need for shelter for homeless persons . . . ." (A. 79–82.) (emphasis added) The Service granted permission for the demonstrators to *erect* tents as structures for a *symbolic* purpose, *not* to actually accommodate overnight sleeping.

Hence, the judicial precedent, the regulatory language and its accompanying policy statement clearly show that the Service has consistently banned camping and overnight sleeping in areas other than officially designated campsites. The court's attempt to reach a different conclusion by relying upon strained inferences flies into the face of controlling judicial precedent and a reasonable interpretation of the regulations.

Finally, the mischief created by the court's decision is that it opens the door for any group of demonstrators to gain in effect a defeasible right to indefinite occupation of national monument grounds or other areas administered by the Service. In the instant case, 36 C.F.R. § 50.19(e)(5) (1980) directs that permits for Lafayette Park, which is considered part of the White House area, not exceed seven days. This regulation also provides that the permit "periods shall be extended for demonstrations only." *Id.* The only stated basis in the regulation for the Service withholding a renewal request is the situation where "another application requests use of the particular area and said application precludes double occupancy." *Id.* Thus, under the court's ruling those sleeping in the tents in Lafayette Park have in effect received a right of indefinite occupation to Lafayette Park which will not be interrupted unless either another group of demonstrators apply for the same location or the Service revokes the permit on a regulatory ground.[4]

The court's own decision in this matter openly acknowledges that the occupation of

---

4. Under 36 C.F.R. § 50.19(f) (1980), the Service may revoke a demonstration permit 'only upon a ground for which an application therefor would be subject to denial under paragraph (d) or (e) of this section." Paragraph (d) of 36 C.F.R. § 50.19 sets forth the grounds upon which demonstration permit applications will be granted:

(d) Permit application for demonstrations and special events shall be processed in order of receipt, and the use of a particular area shall be allocated in order of receipt of fully executed applications, subject to the limitations set forth in this section: *Provided,* That a permit may be denied in writing upon the personal approval of the Director, or, in his absence oɩ unavailability by an authorized delegate of responsible rank and function upon the following grounds:

(1) A fully executed prior application for the same time and place has been received, and a permit has been or will be granted authorizing activities which do not reasonably permit multiple occupancy of the particular area; in that event, an alternate site, if available for the activity, shall be proposed by the Director to the applicant; *Provided, however,* That the following national celebration events shall have priority use of the particular park area during the indicated period, as follows: . . .

(2) It reasonably appears that the proposed demonstration or special event will present a clear and present danger to the public safety, good order, or health.

(3) The proposed demonstration or special event is of such a nature or duration that it cannot reasonably be accommodated in the particular area applied for; in that event, an alternate site, if available for the activity, shall be proposed by the Director to the applicant; in this connection, the Director shall reasonably take into account possible damage to the park, including trees, shrubbery, other plantings, park installations and statutes.

Lafayette Park by plaintiffs/appellees is intended to run through the entire winter and could continue indefinitely if the demonstrators choose to pursue the option set forth in the margin.[5] That result thus violates the binding Supreme Court precedent established in *Morton v. Quaker Action Group, supra.*

(4) The application proposes activities contrary to any of the provisions of this section or other applicable law or regulation.

Paragraph (e) of 36 C.F.R. § 50.19 states the limitations to which permits are subject.

5. The court's decision states:
   This permit may be renewed for an indefinite number of seven-day periods. See 36 C.F.R. § 50.19(e)(5)(i) (1980). It has been renewed weekly since the protest began, and the appellees represent that they intend to seek renewals through March 20, 1982, the last day of winter. Complaint, Exhibit A. Jt.App. at 15.
   *Memo* at 1215 n.9.