Stacey ABNEY, Appellant,

v.

UNITED STATES & District of
Columbia, Appellees.

UNITED STATES, Appellant,

v.

Stacey ABNEY, Appellee.

DISTRICT OF COLUMBIA, Appellant,

v.

Stacey ABNEY, Appellee.

Nos. 79–561, 80–1282 and 80–1287.

District of Columbia Court of Appeals.

No. 79–561 Argued Oct. 23, 1980.

Nos. 80–1282, 80–1287 Argued
July 7, 1981.

Decided Sept. 22, 1982.

Lawrence A. Mintz and Dale C. Andrews, Washington, D. C., for appellant in No. 79–561.

Anthony C. DiGioia, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., Washington, D. C., at the time the brief was filed, John A. Terry, Asst. U. S. Atty., Washington, D. C., at the time the brief was filed, and William D. Nussbaum, Asst. U. S. Atty., Washington, D. C., were on the brief, for appellees in No. 79–561. Benjamin B. Sendor, Asst. U. S. Atty., Washington, D. C., also entered an appearance for appellee in No. 79–561.

Judith W. Rogers, Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., at the time of argument, and Richard B. Nettler, Asst. Corp. Counsel, Washington, D. C., entered an appearance for the District of Columbia in Nos. 79–561 and 80–1287.

David N. Saperstein, New York City, filed an amicus curiae brief for The American Civil Liberties Union Fund of the National Capital Area in No. 79–561.

Regina C. McGranery, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., Washington, D. C., at the time the briefs were filed, John A. Terry, Asst. U. S. Atty., Washington, D. C., at the time the briefs were filed, David E. Sellinger and Anthony C. DiGioia, Asst. U. S. Attys., Washington, D. C., were on the briefs, for appellant in No. 80–1282.

George H. Kendall, Washington, D. C., appointed by this court, for appellee in Nos. 80–1282 and 80–1287.

Before KELLY, KERN and MACK, Associate Judges.

MACK, Associate Judge:

Appellant Abney challenges his convictions for sleeping or lying on an improved portion of the Capitol grounds in violation of Art. 10, § 47(b)(2) of the Traffic Regulations for the United States Capitol Grounds (hereinafter 47(b)(2)) which provides, in pertinent part:

(b) In order to insure that the movement of all vehicular and other traffic (including pedestrian), is allowed to proceed in a safe and unimpeded fashion ... the following shall be unlawful within the [Capitol] Grounds:

(2) any sleeping or lying down on the paved or improved portions of the Buildings and Grounds (such as streets, roads, sidewalks, walkways, steps, curbs, gutters, doorways, alcoves, walls) at any time ....

and for unlawful entry in violation of D.C. Code 1973, § 22–3102 [now D.C.Code 1981, § 22–3102] which reads, in pertinent part:

Any person who, without lawful authority, shall enter, or attempt to enter, any public or private dwelling, building or other property ... against the will of the ... person lawfully in charge thereof, or being therein or thereon without lawful authority to remain therein or thereon shall refuse to quit the same on the demand of the ... person lawfully in charge thereof, shall be deemed guilty of a misdemeanor ....

The government appeals, and Abney cross-appeals, from a dismissal of identical charges against Abney in a subsequent prosecution. The prosecutions stemmed from Abney's arrests on October 18, 1978 and April 15, 1980 for lying in an alcove underneath the east front steps of the Capitol and his subsequent failure to follow the instructions of Capitol police officers that he either sit up or leave.[1]

---

1. These two arrests and appeals are the culmination of six years of attempts by Abney to secure benefits from the Veterans Administration for what he claimed, in the hearing on the motion to dismiss, were service-related illnesses. He further testified that he arrived in Washington in June 1975 to seek redress of his claim but was told that his case would not be

The evidence presented in the government's earlier prosecution was as follows: At approximately 9:30 p.m. on October 18, 1978, approximately five hours after the Capitol building had been closed to the public, a Capitol police officer approached Abney (who was lying prone in an alcove but, according to an officer's testimony, was not intimidating[2] anyone nor was he blocking a nearby doorway, sidewalk, or roadway)[3] and informed him that he was in violation of 47(b)(2). Abney refused to leave, stating that he was protesting the Veterans Administration's denial of his benefits and, consequently, had a constitutional right to remain. The officer then ordered a crime scene search officer to take a picture of Abney and, thereafter, issued him a traffic citation; and, after Abney again refused to leave, arrested him for unlawful entry. The entire process lasted fifteen minutes during which, one officer testified, several tourists walked past the scene and were forced to walk in the roadway because "[the police] were standing adjacent to the Defendant at that time."[4] Abney testified that at the time of his arrest he was located in a "stall," approximately three feet by three feet and that he was not in anyone's way. He continued:

If they could walk through that wall, strong enough to walk through there or ride through there, they could run over me, or step over me. They would have to turn and come in here and do what they want to me. On the street all they have to do is go along, but if they'd be on the street and wanted to see me, I'd tell them my trouble. Other than that, if they don't want to interfere with me, they can keep walking.

The trial court refused to instruct the jury that if it found Abney had a bona fide belief that he had legal authority to remain on the Capitol grounds, he could not be found guilty of unlawful entry. Instead the court instructed the jury that since Abney had no basis for his alleged belief, it did not constitute a defense. The court found Abney guilty of violating the regulation, stressing that due to Abney's presence and the commotion surrounding his arrest, persons were forced to stray from the sidewalk near the alcove into an adjacent roadway. *See Arshack v. United States,* D.C.App., 321 A.2d 845 (1974). The jury then found Abney guilty of unlawful entry.

Abney appeals this conviction on numerous grounds: 1) that the trial court erred in ruling that 47(b)(2) is not unconstitutional, either on its face or as applied to him; 2) that, therefore, there existed no legal authority to ask him to leave the Capital grounds; 3) that, as such, his refusal to leave did not constitute unlawful entry; and 4) that the trial court erred in refusing to instruct the jury as to his bona fide right to remain on the Capitol grounds and in instructing the jury that since Abney's belief in his right to remain was unreasonable, it could not comprise a defense to the charges against him.

The government contends, however, that 1) Abney's sleeping on the Capitol grounds was not protected and, as such, 47(b)(2) is not unconstitutional either on its face or as applied; 2) Abney's mere refusal to leave the Capitol grounds, unsupported by a violation of 47(b)(2), was a proper basis for the unlawful entry charge as long as the order

---

reviewed. Thereafter, he began a round-the-clock vigil in Lafayette Park to appeal both to the President and the Veterans Administration. He testified that during the following several months he was arrested for sleeping in the park eleven times and convicted on four occasions. *See United States v. Abney,* 175 U.S.App.D.C. 247, 534 F.2d 984 (1976) (per curiam) (*Abney I*). He then moved his protest to the Capitol where, according to his testimony, he has been arrested nine times.

2. The officer further testified that a person walking on the sidewalk might have tended to

walk in the street to avoid Abney but stated that Abney need not have been inconveniencing anyone to have been in violation of the regulation.

3. A second officer testified that while senators, on occasion, used this roadway, no senator used the roadway or the sidewalk on the night of the arrest.

4. Another officer present at the scene could not recall any tourists having been present at the time of Abney's arrest.

to leave was reasonable and given in good faith; [5] and 3) the trial court's rulings regarding Abney's proffered good faith defense were correct.[6]

The evidence presented in Abney's motion to dismiss the government's latter prosecution was as follows: Abney testified that he went to the Capitol to protest on April 15, 1980 and entered an alcove under the east front center steps of the Capitol at approximately 9:30 p.m. He further testified that between that time and the arrival of the Capitol Police he spoke with several pedestrians regarding his disability benefits grievance and that he at no time had lain on a nearby sidewalk or in an adjacent roadway so as to block traffic. He also called several witnesses to support his claim that 47(b)(2) was being selectively enforced against him. They all offered accounts of persons reclining on improved areas of the Capitol grounds, during organized demonstrations and at other times, who were not asked by Capitol Police to move or sit up.

Two Capitol Police officers testified as to the events surrounding Abney's arrest. One testified that he approached Abney at 11:05 p.m. and that Abney was lying under the Capitol steps in an alcove against a wall on top of newspapers with a paper bag over his head. He then told Abney that he was violating 47(b)(2) to which Abney replied

that he was protesting. He then issued Abney a ticket for his violation of 47(b)(2) and, when Abney thereafter refused to either sit up or move, arrested him for unlawful entry. Lastly, he testified that he had seen no civilians around Abney on that night and, although he stated that Abney could have rolled into a nearby roadway, both he and another officer agreed that Abney was blocking neither the nearby sidewalk nor the roadway.

The court, after finding that Abney's conduct neither actually nor potentially threatened the movement of traffic on the Capitol grounds, granted his motion to dismiss both charges ruling that, as applied, 47(b)(2) impermissibly abridged Abney's First Amendment rights. The court, however, rejected Abney's claims that 47(b)(2) is an overbroad and unreasonable time, place and manner regulation and that 47(b)(2) had been selectively enforced against him. Consequently, Abney cross-appeals from the court's latter two rulings,[7] while the government appeals the court's ruling that 47(b)(2) was unconstitutionally applied on four bases: 1) that sleeping is not conduct mixed with speech; 2) the trial court's finding that Abney's conduct did not potentially threaten movement of traffic was clearly erroneous;[8] 3) the trial court erred in failing to consider the available alternative means of commu-

---

5. We reject this contention as inconsistent with our holding in *United States v. Nicholson,* D.C. App., 263 A.2d 56 (1970) (per curiam), *aff'g,* 97 Wash.D.L.Rptr. 1213 (July 17, 1969). There we affirmed an opinion by the District of Columbia Court of General Sessions which stated, *inter alia,* that an order by the Chief of the Capitol Police forcing defendants to leave the Capitol grounds is valid only if it is "based on something other than and additional to the unlawful entry statute itself or the Chief's official status." *But cf. Michigan v. DeFillippo,* 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979) (if an arrest is valid, evidence garnered in a search incident to that arrest need not be suppressed if, subsequent to that arrest, the ordinance upon which the arrest was based is found to be unconstitutionally vague.)

6. In light of our disposition of this appeal on other grounds, we do not address Abney's contentions regarding his bona fide right to remain on the Capitol grounds and his good faith belief in his right to remain thereon.

7. We do not address the issue of selective enforcement here as we are affirming the trial court's ruling in Nos. 80–1282 and 80–1287 on alternative grounds.

8. This court may not set aside a trial court's findings of fact unless they are plainly wrong or without evidence to support them. *Bell v. District of Columbia Department of Corrections,* D.C.App., 403 A.2d 330 (1979) (citing D.C.Code 1973, § 17–305(a) [now D.C.Code 1981, § 17–305(a) ] ). The trial court had before it the testimony of Abney who denied lying in the roadway or sidewalk and the testimony of a Capitol police officer who stated that on the night of his arrest Abney was blocking neither pedestrian nor vehicular traffic. While he also stated that it was possible for Abney to have rolled into the street, we do not think this testimony was sufficient to vitiate the trial court's finding or render it plainly wrong or unsupported by evidence.

nication which Abney could have used; and 4) the trial court's decision would require selective enforcement of an otherwise uniform regulation which prohibits all sleeping on improved portions of the Capitol grounds.

We find that 47(b)(2) is facially constitutional. We find that the regulation was nonetheless unconstitutionally applied to Abney. As such, we reverse his convictions of a 47(b)(2) violation and unlawful entry in No. 79–561 and affirm the court's dismissal of those same charges in Nos. 80–1282 and 80–1287.[9]

## I.

Since both Abney's and the government's appeals revolve primarily around the issues of whether 47(b)(2), as drafted or applied, sweeps overbroadly across First Amendment rights, we must first determine whether the conduct in which Abney was engaged implicated the First Amendment. We hold that it did.

In *United States v. Abney*, 175 U.S. App.D.C. 247, 534 F.2d 984 (1976) (per curiam) (*Abney I*), the court held that Abney's sleeping in Lafayette Park was not only necessary to his round-the-clock vigil protesting his treatment by the Veterans Administration but also was "sufficiently expressive in nature to implicate First Amendment scrutiny . . . ." *But cf. Vietnam Veterans Against The War v. Morton*, 164 U.S.App.D.C. 391, 396, 506 F.2d 53, 58 (1974) (per curiam) (Note, however, that

*Morton's* language that "[c]amping overnight . . . has no more relevance to free speech than say, digging latrines in a public park" was deemed "nonbinding dictum" in *Abney I* according to the circuit court's holding in *Community for Creative Non-Violence v. Watt*, 216 U.S.App.D.C. 394, 670 F.2d 1213, 1217 n.26 (1982)). Our review of the records at trial indicates that Abney's Capitol protest was merely a continuation of his Lafayette Park vigil and his protests which have continued since his 1975 arrival in the District. Officer Eugene Wood, who arrested Abney on April 15, 1980, testified that he had seen Abney on the Capitol grounds "protesting some lack of VA benefits . . . quite a few times." In addition, Abney testified that he had spent virtually every night since December 1975 (the primary exceptions being those nights he spent in jail or in mental institutions) on the Capitol grounds in a continual protest against the denial of his benefits. In fact, he had been released from jail on the morning of April 15 and returned to the Capitol to "continue [his] protest and demonstrate" and had walked around and spoken with several people about his grievance before entering the alcove. As such, we find that the evidence presented was sufficient to bring these cases within the holding in *Abney I* and the ambit of the First Amendment.[10]

## II.

Both trial judges reviewed and denied Abney's pretrial motions to dismiss the

---

9. It is a policy and practice of appellate courts that they "will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of." *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). We reach the constitutional issues presented here, however, as we find both that there is no other adequate ground upon which to base our decision and that the constitutional issues are presented here in "clean-cut and concrete form, unclouded by any serious problem of construction relating . . . to the terms of the questioned legislation . . . ." *Rescue Army v. Municipal Court of Los Angeles*, 331 U.S. 549, 584, 67 S.Ct. 1409, 1427, 91 L.Ed. 1666 (1947).

10. While there was inconclusive testimony below regarding whether Abney was, as in *Abney I*, carrying placards as part of his protest, we do not find this to be determinative, especially in light of *Abney I's* finding that the placards were not always visible during his Lafayette Park vigil but were sometimes wrapped and placed on the ground. *Abney I, supra*, 175 U.S.App.D.C. at 248 n.1.

In addition, the record is not clear in No. 79–561 or Nos. 80–1282 and 80–1287 as to whether Abney was sleeping or lying, or both, in the alcove at the time of his arrests. This is not crucial to our determination, however, as either act would be incidental to Abney's continuous vigil.

information pending against him based on the facial unconstitutionality of 47(b)(2). We affirm those rulings.

The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time. . . . The control of travel on the streets is a clear example of governmental responsibility to insure this necessary order. A restriction in that relation, designed to promote the public convenience in the interest of all, and not susceptible to abuses of discriminatory application, cannot be disregarded by the attempted exercise of some civil right which, in other circumstances, would be entitled to protection. [*Cox v. Louisiana,* 379 U.S. 536, 554, 85 S.Ct. 453, 464, 13 L.Ed.2d 471 (1965).]

*See also Leiss v. United States,* D.C.App., 364 A.2d 803, 808, *cert. denied,* 430 U.S. 970, 97 S.Ct. 1654, 52 L.Ed.2d 362 (1976). The wording of 47(b)(2)—"[i]n order to insure that the movement of all vehicular and other traffic (including pedestrian), is allowed to proceed in a safe and unimpeded fashion . . ."—clearly implies a legislative and administrative purpose sufficient to support a restriction of the scope of 47(b)(2) to those instances where the "acts or conduct [interfere] with the orderly processes of the Congress, or with the safety of individual legislators, staff members, visitors or tourists . . . ." As so limited, 47(b)(2) is constitutional. *United States v. Nicholson,* 97 Wash.D.L.Rptr. 1213, 1218–19 (July 17, 1969). *See generally Arshack v. United States, supra* (D.C.Code 1973, § 9–123(b)(5), which prohibited persons from "willfully . . . obstruct[ing] . . . passage through or within . . . any of the Capitol Buildings," was constitutionally applied to appellants who sat or had lain down in the corridor outside the Senate Chamber while the Senate was in session). While we hold that 47(b)(2) is, on its face, constitutional we must still address whether it was constitutionally applied to Abney and, as such, whether his refusal to leave the Capitol grounds on either occasion formed an ade-

quate basis for his arrest for unlawful entry. *See Smith v. United States,* D.C.App., 445 A.2d 961, 967 (1982) (en banc) ("[a]ppellants' arrests might well have been susceptible to charges of unreasonableness had they occurred on government property other than the interior of the White House grounds—*e.g.,* on the steps of the United States Capitol . . . .").

### III.

In *United States v. O'Brien,* 391 U.S. 367, 376–77, 88 S.Ct. 1673, 1678–79, 20 L.Ed.2d 672 (1967), the Supreme Court enunciated the balancing test to be utilized in determining whether, "when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." The Court continued:

[W]e think it clear that a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. [*Id.* at 377, 88 S.Ct. at 1679.]

The application of 47(b)(2) to Abney in No. 79–561 satisfied the first three prongs of the *O'Brien* test. It is certainly within a government's power to regulate traffic and activities which might otherwise obstruct its orderly operations. Further, the regulation also clearly promotes an important governmental interest, *i.e.,* the unobstructed flow of traffic on the Capitol grounds. *See Arshack v. United States, supra* 321 A.2d at 849. Likewise, it is obvious that the governmental interest at issue, the free flow of traffic, is not related to the suppression of free expression. *See Cox v. Louisiana, supra* at 554, 85 S.Ct. at 464. With regard to the fourth prong, however, it is clear that, unless the government showed that Abney's presence had actually or po-

tentially threatened the movement of traffic on the grounds, the application of 47(b)(2) and, thereafter, of the District's unlawful entry statute to him, constituted a greater restriction of his First Amendment freedom than was necessary to further the government's legitimate interests.

█ The trial court in the first prosecution found that Abney's mere presence, which admittedly did not obstruct the flow of traffic under or near the east front steps of the Capitol, nevertheless fell within the scope of 47(b)(2) in that pedestrians, due to the number of police surrounding him to effect his arrest, were forced to walk into the adjacent roadway. We cannot agree and, thus, hold that the trial court's interpretation, which allowed the exigencies inherent in enforcement to convert an otherwise protected mode of expression into proscribed conduct, constituted a restriction of Abney's First Amendment freedom greater than was essential to the government's interest in unimpeded traffic flow. Hence, we reverse Abney's convictions of both a violation of 47(b)(2) and unlawful entry. We also affirm, for the reasons enunciated herein, the trial court's ruling in Nos. 80–1282 and 80–1287 that 47(b)(2) was unconstitutionally applied to Abney in light of the lack of evidence that he actually or potentially interfered with the traffic on the Capitol grounds.

█ We also reject the government's contention that the trial court in Nos. 80–1282 and 80–1287 erred in holding that the restriction of Abney's First Amendment freedom was greater than necessary in that it failed to consider the alternative means of communication available to Abney.

In *Leiss v. United States, supra,* we adopted and applied the alternative means of expression test enunciated by the Supreme Court in *Pell v. Procunier,* 417 U.S. 817, 823–24, 94 S.Ct. 2800, 2804–05, 41 L.Ed.2d 495 (1973). *Leiss* involved an individual who entered the White House grounds through a public gate and, once inside, began reading aloud a statement protesting the United States' policies in Southeast Asia. He was arrested and con-

victed for unlawful entry after refusing to leave the grounds once public visiting hours had ended. We held there that his exercise of his First Amendment rights was not excessively circumscribed in that "the record indicate[d] that no attempt would have been made to interfere with him after the closing hour had he chosen simply to obey the order to depart and continue his protest just outside the gate, some 15 feet away." Stressing "the alternative means available to appellant for the continued exercise of his rights, and the *incidental manner* in which compliance with the lawful order would have limited his protest," this court found no infringement of protected expression sufficient to countervail valid governmental interest in limiting his activity. (Emphasis added.) *Accord Smith v. United States, supra* 445 A.2d at 967 (affirming conviction for unlawful entry based upon appellants' refusal to desist from a demonstration on the White House grounds when, *inter alia,* they could easily have conveyed their opinions from the public sidewalk or reached the President with other "considerably more legitimate avenues of petition"); *O'Brien v. United States,* D.C.App., 444 A.2d 946 (1982) (affirmed conviction for unlawful entry of appellant who had attempted to hand out commercial leaflets on Washington Metropolitan Area Transit Authority property when, *inter alia,* he was informed he could continue his leafletting without interruption if he moved to a sidewalk 15 feet away).

The instant case is clearly distinguishable. On this record, the trial court was neither required to consider nor to address the issue of available alternative means. As we have pointed out in Part I, *supra,* Abney's Capitol vigil was a continuation of his ongoing protest of the denial of benefits. The court in *Abney I* concluded that Abney's sleeping was an integral part of and necessary to this round-the-clock vigil. Neither we nor the trial court have been provided with a record showing alternative means available to Abney for the continued exercise of his rights, and we cannot conclude that the government's attempt to ap-

ply 47(b)(2) and, thus, interrupt his vigil was merely an "incidental" intrusion onto his First Amendment freedom.

IV.

In conclusion, we affirm the trial court's rulings in No. 79–561 that 47(b)(2) is constitutional but reverse its conclusion that it was constitutionally applied here where there was no evidence of record that appellant's conduct alone actually or potentially impeded the flow of traffic on the Capitol grounds. Consistent with our conclusions in No. 79–561, we affirm the trial court's dismissal of the same charges against Abney in Nos. 80–1282 and 80–1287.

*Affirmed in part, reversed in part.*

KERN, J., concurs in the result.