**CUSTOMERS PARKING, INC., et al., Appellants,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 87–1125.**

District of Columbia Court of Appeals.

Argued Jan. 5, 1989.
Decided Aug. 18, 1989.

**652**

Gilbert Hahn, Jr., with whom Janet L. Eveland and Tanja H. Castro, Washington, D.C., were on the brief, for appellants.

Martin B. White, Asst. Corp. Counsel, with whom Frederick D. Cooke, Jr., Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the *brief,* for appellee.

Before MACK, BELSON, and TERRY, Associate Judges.

BELSON, Associate Judge:

This appeal raises the question whether taxpayers who have failed to take timely administrative appeals from increases in their annual property tax assessments may nevertheless obtain judicial review of their assessments because other taxpayers, whose property is used jointly with that of the first-mentioned taxpayers as a parking lot, took a timely appeal from a supplemental assessment for the same tax year. We hold that judicial review of the increased annual assessments is not available under those circumstances.

The property at issue is in the block between 9th and 10th Streets and H Street and G Place, N.W. It consists of twenty-two lots owned by the taxpayers and operated jointly as a commercial parking lot with an office building on lot 88. Appellant Customers Parking, Inc., owns nine of the lots, appellant Downtown Parking Corporation owns three, and L.B. Doggett, Jr., and Gladys Doggett own ten. The taxpayers petitioned the Superior Court for review of the initial assessments of all twenty-two lots. Appellants L.B. Doggett, Jr., and Gladys Doggett also sought judicial review of the supplemental assessment by the District of Columbia that increased the assessed value of lot 88 as a result of renovations to the building on that lot. The trial court reversed the Board of Equalization and Review's (the "Board's") affirmance of the supplemental assessment of lot 88 and accordingly reduced the assessment for that lot to its original level. The District of Columbia has not appealed that ruling. The trial court also granted summary judgment in favor of the District as to all lots except lot 88 on the basis that because there was no timely appeal to the Board of the assessments for those lots, pursuant to D.C.Code § 47–825 (1981), the court had no jurisdiction to consider petitions for relief regarding those lots. Taxpayers now appeal this latter ruling by the trial court. We deem the trial court's action the equivalent of a dismissal for lack of jurisdiction, and affirm.

Lot 88 was initially assessed at $484,500 for the land and $40,500 for the building

for a total assessed value of $525,000. The other twenty-one lots were assessed at various values with the sum total of the assessments of the twenty-two lots amounting to $10,026,900. The above assessments were made as of February 1982 and were for the fiscal 1983 tax year in accordance with D.C.Code § 47–824 (1981). In March of 1982, the Doggetts completed a remodeling of the interior of the building on lot 88. The District placed the increase in value brought about by the remodeling at $60,-000, the cost of the remodeling, and in July 1982 sent notice to the taxpayers of a supplemental assessment of lot 88 in compliance with D.C.Code § 47–829(a) (1981). The District increased the assessed value of the building from $40,500 to $100,500. The Doggetts appealed this supplemental assessment to the Board, which affirmed it. The taxpayers then petitioned for review in the Superior Court, Tax Division, of the assessments for all twenty-two lots. The District filed a motion for summary judgment as to twenty-one of the twenty-two lots, that is, all of the lots except for lot 88 upon which a supplemental assessment had been made. The trial court granted the District's motion. The taxpayers appealed immediately to this court but the case was remanded because the order of partial summary judgment appealed from was deemed not to constitute a final, appealable order. Following trial, the Tax Division issued a final order, dismissing the taxpayers' petition with respect to all lots other than lot 88 but reducing the assessment on lot 88

from $585,000 back to the original assessment of $525,000. The taxpayers now appeal that portion of the order dismissing their petition with respect to the twenty-one lots other than lot 88.[1]

D.C.Code §§ 47–801 through 47–863 (1981) establishes a comprehensive system for property assessment and taxation in the District of Columbia. D.C.Code § 47–824 provides that each taxpayer shall be notified of the assessment of the taxpayer's real property for the following fiscal year "as soon as possible after January 1st, but no later than March 1st of each year...." The procedure for appealing a tax assessment is set forth in D.C.Code § 47–825, which provides that on or before April 15th of each year taxpayers may appeal their tax assessments for the forthcoming year.[2] The District of Columbia complied with § 47–824 by notifying appellants of the fiscal year 1983 tax assessments on the property in February 1982. Appellants failed to appeal these assessments to the Board by April 15, 1982. In light of that fact, the trial court ruled that it lacked jurisdiction to hear appellants' petitions for relief regarding these assessments.[3] Appellants argue that the District either should be deemed to have waived its jurisdictional argument, or should be estopped from asserting the court's lack of jurisdiction because it took a contrary position before the Board.

Regardless of the merits of appellants' contentions regarding the District's posi-

1. As to the assessment of lot 88, appellants, the Doggetts, raise no complaint, apparently satisfied with the trial judge's favorable treatment of their petition in that regard. The District of Columbia has not filed a cross-appeal of the trial court's ruling reducing the assessment for lot 88 from $585,000 to the pre-remodeling assessed value of $525,000.

2. Section 47–825(i) provides that "[a]ny person aggrieved by any assessment, classification, equalization, or valuation made, may, within 6 months after October 1st of the calendar year in which such assessment, classification, equalization, or valuation is made, appeal from such assessment, classification, equalization, or valuation in the same manner and to the same extent as provided in §§ 47–3033 and 47–3304,

*if such person shall have first made his complaint to the Board respecting such assessment as herein provided....*" (emphasis added). D.C. Code § 47–825(e) states: "On or before April 15th of each year any taxpayer may appeal the amount of his assessment for the forthcoming fiscal year."

3. The trial court found that it did have jurisdiction to hear the Doggetts' appeal regarding the supplemental assessment on lot 88. D.C.Code § 47–829(b) provides that taxpayers have until "six months after October 15th of the year in which said valuation or assessment is made" to appeal supplemental assessments. Appellants filed a timely appeal to the supplemental assessment on lot 88.

tion before the Board,[4] their waiver and estoppel arguments must be rejected. In *National Graduate University v. District of Columbia,* 346 A.2d 740, 743 (D.C.1975), this court held that the timing imperatives for appeals of tax assessments are not merely statutes of limitation that may be waived, but are jurisdictional requirements that cannot be waived. As we have previously explained,

> [s]ubject matter jurisdiction of the Superior Court does not attach until that prerequisite [a complaint to the Board] has been satisfied, and a refund based on a final determination of the Superior Court presupposes that the taxpayer has complied with the procedure mandated by the legislature. If "aggrieved" for any reason, the taxpayer must appeal within the permitted time to the Board of Equalization and Review.

*District of Columbia v. Keyes,* 362 A.2d 729, 733 (D.C.1976) (footnote omitted) (citation omitted). Although these decisions were based on the statutory predecessor to the current property tax assessment scheme, their reasoning applies with equal force to this case. Moreover, these principles are entirely consistent with the oft-stated axiom that lack of subject matter jurisdiction can be raised any time, even by this court itself, *sua sponte. In re Estate of Dapolito,* 331 A.2d 327, 328 (D.C.1975). As our federal appellate brethren succinctly stated in relation to a similar time requirement,

> If compliance with the ninety-day charge-filing requirement is jurisdictional, there can be no estoppel. Parties cannot waive subject matter jurisdiction by their conduct or confer it on the court by consent, and the absence of such jurisdiction can be raised at any time.

*Laffey v. Northwest Airlines, Inc.,* 185 U.S.App.D.C. 322, 367, 567 F.2d 429, 474 (1976) (footnotes omitted); *accord, Thomas v. District of Columbia,* 82 F.R.D. 93, 94 (D.D.C.1979) ("Even the party who invoked the jurisdiction of the federal court is not estopped from raising lack of subject matter jurisdiction after a trial on the merits.") (citation omitted). Since no appeal of the original assessments of any of the lots was filed by April 15, 1982, the courts (and the Board for that matter) lack subject matter jurisdiction to hear appellants' appeals regarding the District's tax assessments of the lots other than the supplemental assessment of lot 88.

■■■ Appellants also contended before the trial court that under the reasoning of *Cathconn Assoc. Ltd. Partnership v. District of Columbia,* 107 Daily Wash.L.Rptr. 957 (June 1, 1979), the appeal of the supplemental assessment of lot 88 necessarily opened the assessments of neighboring lots for reconsideration.[5] In seeking reconsideration of the trial court's adverse ruling, they emphasized *Cathconn's* holding that an assessment must be based on the total value of the property and contended that where several lots are owned and operated together as one economic unit, the entire group of lots must be considered together in order to determine accurately their fair market value. Thus, they argued, a supplemental assessment of one lot necessarily opens the door to reexamination of the assessments of all the lots in the group. But, as Judge Barnes correctly explained in her order granting partial summary judgment, appellants' argument was based on a misinterpretation of *Cathconn, supra.* In that case the trial court ruled that the District, in levying a supplemental assessment, was not limited to adding the cost of additions and renovation to the prior value. Rather, a supplemental assessment should focus on fair market value just as in the case of a regular assessment, and in arriving at fair market value the assessor may

---

4. In taking the position that the District deemed the assessments of all the lots to have been reopened, appellants rely upon the remarks of Assistant Corporation Counsel, Richard L. Aguglia, before the Board. Having reviewed those remarks in context, we disagree with appellants' interpretation of them.

5. The trial judge in this case was not bound by the holding of another Superior Court judge in a different case, but it was appropriate for her to treat it, as she did, as persuasive authority. We too regard the holding in *Cathconn* as sound, but find it readily distinguishable from the case before us.

consider any synergistic or discordant effects flowing from the improvement. Yet the holding in *Cathconn* related solely to the method of determining a supplemental assessment of one particular property. Even if we should postulate that a factor the Board may consider in determining fair market value of a particular lot is the relationship between it and other adjacent properties, a reasonable proposition in itself, that would not mean that the assessments of the other lots are thereby reopened when there is an appeal to the Board from a supplemental assessment on the particular lot. As Judge Barnes pointed out, the issue in *Cathconn*, like the issue here, related to the identification of the correct method for arriving at the supplemental assessment of a single property.[6]

*Affirmed.*

6. Appellants also maintain that under Board Rule 4 the District has the right to request a change at the Board level in assessments of "adjoining, similar or related properties which may be affected by the Board's decision or a petition under review." 9 DCMR § 2008.5(a). In the context of this case, they argue, Board Rule 4 gave the District the option of reopening the assessments of the other twenty-one lots. They urge this court, in order to be fair, to construe Board Rule 4 as giving both sides an equal right to reopen the original assessments of the adjoining twenty-one lots. In view of our holding that the plain language of the statute means that there was no timely appeal to the Board with respect to the original assessments of these lots, we decline to reach this issue.