Theresa D. LEWIS, Administrator, District of Columbia Housing Regulation Administration, Appellant,

v.

HOTEL AND RESTAURANT EMPLOYEES UNION, LOCAL 25, AFL—CIO, Appellee.

No. 92–CV–1318.

District of Columbia Court of Appeals.

Argued May 13, 1998.
Decided March 11, 1999.

Lutz Alexander Prager, Assistant Deputy Corporation Counsel, with whom Jo Anne Robinson, Principal Deputy Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellant.

Daniel M. Katz, Washington, DC, with whom Nicolas M. Manicone, Riverdale, MD, was on the brief, for appellee.

Before TERRY and STEADMAN, Associate Judges, and KERN, Senior Judge.

TERRY, Associate Judge:

Local 25 of the Hotel and Restaurant Employees Union ("the union") brought suit to challenge the constitutionality of certain provisions of the District of Columbia Noise Control Act of 1977, D.C.Law 2–53, *codified at* 20 DCMR §§ 3000 *et seq.* (1984). The trial court enjoined the noise limits and enforcement provisions of 20 DCMR §§ 3001.1 and 3011.1 as unconstitutional, and the District of Columbia appealed. While the appeal was pending, the Council of the District of Columbia enacted legislation that materially amended the Noise Control Act in favor of non-commercial speech. The parties agree that enactment of this legislation mooted this appeal. The only issue remaining before us is whether the original opinion of the trial court should be vacated. The District argues that it should be; the union argues that it should not. We agree with the District.

## I

The District of Columbia Noise Control Act of 1977 ("the Act"), passed by the Council and signed by the Mayor, took effect on March 16, 1978. Section 5 of the Act provided in part:

No person shall cause, suffer, or permit any sound which emanates from an operation, activity, or noise source under his or her control to exceed the maximum permissible sound level established in the following table as applicable for the time of day or night and the zoning location where the noise originates.

D.C.Law 2–53, § 5(a), *as codified at* 20 DCMR § 3001.1 (1984). The appended table established the maximum daytime noise level in a residential or special purpose zone at sixty decibels. The Act also provided:

Notwithstanding any other provision of the Act, if the Mayor finds that any person is acting in a manner that causes or contributes to a sound level of a characteristic and duration which is likely to be injurious to the public welfare, the health of human or animal life, or to property, or which interferes with the reasonable enjoyment of life or property, the Mayor may order the person immediately to reduce or discontinue the act.

D.C.Law 2–53, § 11(a), *as codified at* 20 DCMR § 3011.1 (1984).

In September 1991 the union became embroiled in a labor dispute with the Jefferson Hotel. For almost four months beginning in October 1991, members of the union, using bullhorns and loudspeakers, engaged in picketing and "related communications efforts" in front of the hotel, at the corner of 16th and M Streets, N.W., in downtown Washington. On February 3, 1992, the Department of Consumer and Regulatory Affairs—the agency charged with enforcement of the Act [1]— issued a cease and desist order to the union, coupled with a notice of infraction for using a bullhorn to amplify speech in excess of the limits prescribed by 20 DCMR § 3001.1.[2] On February 11 the union filed suit seeking to have the Act declared unconstitutional as it applied to union members' use of loudspeakers and bullhorns at picketing sites, and requesting an order permanently enjoining District of Columbia officials from enforcing provisions of the Act against union members.[3] *See* COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON CONSUMER AND REGULATORY AFFAIRS, REPORT ON BILL 11–114, NOISE CONTROL AMENDMENT ACT OF 1996, at 2–3 (March 12, 1996) (hereafter "COMMITTEE REPORT") (summarizing the dispute between the union and the District).

On February 12 the court issued a temporary restraining order barring enforcement of the Act against the union. Thereafter the labor dispute between the union and the hotel was settled, and the District withdrew both the notice of infraction and the cease and desist order.

On October 1, 1992, the court entered summary judgment in favor of the union and permanently enjoined enforcement of the Act against the union. In its order the court:

DECLARED that the enforcement ... of the [Act], specifically 20 DCMR §§ 3001.1 and 3011.1 as applied to a labor union's use of amplified sound in conjunction with its public speaking activities on public streets, alleys, and thoroughfares, violates the First Amendment of the United States Constitution, and ...

FURTHER ORDERED, that ... all persons acting on behalf of the District of Columbia are permanently barred from any further acts to enforce said noise regulations against [the union's] use of bullhorns, loudspeakers, or other amplification devices in conjunction with its public speaking activities on public streets, alleys, or thoroughfares in the District of Columbia.

1. *See* D.C.Law 2–53, § 4, *codified at* 20 DCMR § 3000.3 (1984).

2. The Department had previously issued a notice of infraction to the union on December 20, 1991, but that notice was withdrawn on February 6, 1992.

3. The complaint alleged that enforcement of the Act violated union members' rights under the First Amendment and under federal law.

The District noted an appeal from the order granting summary judgment. Several months later the District filed a motion in this court stating that the issues presented by the appeal would be resolved by the enactment of pending legislation to amend the Act. We therefore entered an order staying the appeal.

Eventually, on June 26, 1996, the Council significantly amended the Act in several respects pertinent to this case. Noise Control Amendment Act of 1996, D.C.Act 11–297, 43 D.C. Register 3727, *renumbered as* D.C.Law 11–161, 43 D.C. Register 5614 (1996), *codified at* 20 DCMR §§ 2700 *et seq.* (1997) ("the Amended Act"). First, the Amended Act specifically exempts loudspeakers and amplifiers from the decibel level restrictions set forth in the accompanying table and limits their use only to the extent that their use becomes a "noise disturbance." D.C.Act 11–297, §§ 2(d) and 2(e), *codified at* 20 DCMR §§ 2701.1 and 2800.2 (1997). A noise disturbance is defined as "any sound which is loud and raucous or loud and unseemly and unreasonably disturbs the peace and quiet of a reasonable person of ordinary sensibilities in the vicinity thereof. . . ." *Id.* § 2(b), *codified at* 20 DCMR § 2799 (1997). Non-commercial speech below eighty decibels in the central business district, however, is not deemed a noise disturbance. *Id.* Second, the Amended Act retained to some extent the grant of discretion to the Mayor under the prior Act, *id.* § 2(m), *codified at* 20 DCMR § 2711.1 (1997) ("If the Mayor finds that any person is acting in a manner that constitutes a violation of the [Amended] Act, the Mayor may order the person to cease and desist"), but also empowered the Mayor to grant a variance from the maximum noise limitations "when strict compliance with these provisions would impose an undue hardship on the applicant, on the community, or on other persons." *Id.* § 2(h), *codified at* 20 DCMR § 2705.1 (1997).

Following the effective date of the Amended Act, we lifted the stay of the appeal. The case proceeded to briefing and argument, which focused only on the issues of mootness and vacatur.

## II

The parties do not dispute that passage of the Amended Act mooted the District's appeal from the trial court's order granting summary judgment in favor of the union. *Bowen v. Kizer,* 485 U.S. 386, 387, 108 S.Ct. 1200, 1201, 99 L.Ed.2d 402 (1988); *Burke v. Barnes,* 479 U.S. 361, 363, 107 S.Ct. 734, 736, 93 L.Ed.2d 732 (1987); *see SEC v. Medical Committee for Human Rights,* 404 U.S. 403, 405–406, 92 S.Ct. 577, 579, 30 L.Ed.2d 560 (1972). The only issue left for us to decide is whether that order should be vacated.

In *United States v. Munsingwear, Inc.,* 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950), the Supreme Court ruled that when a claim becomes moot while awaiting review in a federal appellate court, the judgment below should be vacated and the case remanded with directions to dismiss. *Id.* at 39, 71 S.Ct. 104; *see Deakins v. Monaghan,* 484 U.S. 193, 200, 108 S.Ct. 523, 528–29, 98 L.Ed.2d 529 (1988). The Court explained in *Munsingwear* that this procedure "clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance," thereby preserving "the rights of all parties." 340 U.S. at 40, 71 S.Ct. 104; *see also Deakins,* 484 U.S. at 200, 108 S.Ct. 523.

In *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,* 513 U.S. 18, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994), the Supreme Court revisited *Munsingwear* and clarified that vacatur is not an automatic right, but rather an equitable remedy. *Id.* at 23–25, 115 S.Ct. 386; *accord, Columbian Rope Co. v. West,* 330 U.S.App.D.C. 86, 91 n. 5, 142 F.3d 1313, 1318 n. 5 (1998); *National Black Police Ass'n v. District of Columbia,* 323 U.S.App. D.C. 292, 297, 108 F.3d 346, 351 (1997). The Court reiterated that moot cases must be "disposed of . . . in the manner most consonant to justice . . . in view of the nature and character of the conditions which have caused the case to become moot." *U.S. Bancorp,* 513 U.S. at 24, 115 S.Ct. 386 (internal quotation marks and citations omitted). The principal factor to be considered is "whether the party seeking relief from the judgment below caused the mootness by voluntary action." *Id.; see also Arizonans for Official*

*English v. Arizona*, 520 U.S. 43, 74–75, 117 S.Ct. 1055, 1072–73, 137 L.Ed.2d 170 (1997). A party seeking to avoid the legal consequences of a trial court decision cannot be allowed to circumvent appellate review by employing "the secondary remedy of vacatur as a refined form of collateral attack on the judgment." *U.S. Bancorp*, 513 U.S. at 27, 115 S.Ct. 386; *see United States v. Garde*, 270 U.S.App.D.C. 275, 279, 848 F.2d 1307, 1311 (1988). "[T]o grant vacatur automatically in such instances would be to treat judicial precedents as 'the property of private litigants' and 'would—quite apart from any considerations of fairness to the parties—disturb the orderly operation of the federal judicial system.'" *National Black Police Ass'n*, 323 U.S.App.D.C. at 297, 108 F.3d at 351 (quoting *U.S. Bancorp*; other citations omitted).

The question we must now resolve is whether the principles announced in *U.S. Bancorp* apply when the party seeking relief from the judgment below is the government and the case has been mooted by the passage of new legislation. The United States Court of Appeals for the District of Columbia Circuit recently answered this question in the negative:

> Clearly, the passage of new legislation represents voluntary action, and thus on its face the *Bancorp* presumption might seem to govern. We believe, however, that application of the *Bancorp* presumption in this context is not required by the *Bancorp* opinion's rationale and would be inappropriate, at least if there is no evidence indicating that the legislation was enacted in order to overturn an unfavorable precedent.

4. The court in *National Black Police Ass'n* referred to the holding in *U.S. Bancorp* as a "presumption." The Supreme Court, however, did not use that term in *U.S. Bancorp*, and thus we are reluctant to put such a label on what the Court said. The precise holding of the Court in *U.S. Bancorp* was "that mootness by reason of settlement does not justify vacatur of a judgment under review." 513 U.S. at 29, 115 S.Ct. 386. What the Court of Appeals seems to have focused on, however, is the notion that "when 'the party seeking relief from the judgment below caused the mootness by voluntary action,'" vacatur is "usually inappropriate"—a somewhat broader

*National Black Police Ass'n*, 323 U.S.App. D.C. at 297, 108 F.3d at 351;[4] *see also American Library Ass'n v. Barr*, 294 U.S.App.D.C. 57, 66, 956 F.2d 1178, 1187 (1992) (rejecting argument that vacatur was not proper when case became moot on appeal as a result of Congress' passage of new legislation).

 Legislative action is presumptively legitimate. *See Edward J. De Bartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council*, 485 U.S. 568, 575, 108 S.Ct. 1392, 1397–98, 99 L.Ed.2d 645 (1988); *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440, 105 S.Ct. 3249, 3254–55, 87 L.Ed.2d 313 (1985). Moreover, legislative action repairing "what may have been a constitutionally defective statute . . . [is] responsible lawmaking." *American Library Ass'n v. Barr*, 294 U.S.App.D.C. at 66, 956 F.2d at 1187. Thus it would be inappropriate for this or any court to apply against a coordinate branch of government a doctrine that appears to rest on the likelihood of manipulative purpose, especially when—as in this case—there is no evidence of such a purpose. "The legislature may act out of reasons totally independent of the pending lawsuit, or because the lawsuit has convinced it that the existing law is flawed." *National Black Police Ass'n*, 323 U.S.App.D.C. at 298, 108 F.3d at 352.

 It is clear from the legislative history that the Amended Act was enacted in response to the litigation in this very case. COMMITTEE REPORT at 2. We are satisfied, however, that its enactment did not represent manipulation of the judicial process by the Council, but was instead "responsible lawmaking." *American Library Ass'n*, 294

principle than the actual holding of the Supreme Court which we have just quoted. *See National Black Police Ass'n*, 323 U.S.App.D.C. at 297, 108 F.3d at 351 (citing *U.S. Bancorp*, 513 U.S. at 23–25, 115 S.Ct. 386). In any event, given the Supreme Court's characterization of vacatur as an "equitable remedy," 513 U.S. at 25, 115 S.Ct. 386, we prefer to read *U.S. Bancorp* as establishing only an equitable principle whose application may vary from case to case, keeping in mind the singular relevance of "voluntary action" in appropriate cases. *See id.* at 29, 115 S.Ct. 386 ("the determination is an equitable one").

U.S.App.D.C. at 66, 956 F.2d at 1187. "Bill 11–114 was drafted . . . in an attempt to find an alternative approach that would subject the playing of musical instruments and the amplification of sound by electronic means to some reasonable noise level limitation." COMMITTEE REPORT at 3. Excerpts from the public hearings and executive testimony on the bill that became the Amended Act show that it was the intent of the Council to accomplish this goal while ensuring First Amendment protection for non-commercial speech. *See id.* at 3–6. The lack of any evidence that the Council's action was motivated merely by an effort to overturn an unfavorable judicial precedent persuades us that the *U.S. Bancorp* rule should not be applied in this case. *See National Black Police Ass'n,* 323 U.S.App.D.C. at 297, 108 F.3d at 351.

Separation of powers principles also suggest that *U.S. Bancorp*'s rule against vacatur should not be applied to a lawsuit, such as this one, that has been mooted by legislative action. In the District of Columbia, the legislature is responsible for enacting laws, and the executive is responsible for carrying out (and defending) the laws that the legislature has created. *See* D.C.Code §§ 1–204, 1–242 (1992 & 1998 Supp.). Therefore, when the legislature enacts a statute which moots an appeal brought by a non-legislative part of the government, "the executive branch is in a position akin to a party who finds its case mooted on appeal by 'happenstance,' rather than events within its control." *National Black Police Ass'n,* 323 U.S.App.D.C. at 299, 108 F.3d at 353. Since it was not the executive branch that caused this appeal to become moot, the rule announced in *U.S. Bancorp* does not really fit this case. *See American Library Ass'n,* 294 U.S.App.D.C. at 66, 956 F.2d at 1187.

In opposing the District's request for vacatur, appellee cites *19 Solid Waste Department Mechanics v. City of Albuquerque,* 76 F.3d 1142 (10th Cir.1996), for the proposition that vacatur should not be granted when mootness is the result of "governmental ac-

tion." In that case a challenge to the city's drug testing policy was rendered moot when the city adopted a different policy. The Tenth Circuit, citing *U.S. Bancorp,* refused to grant the city's request for vacatur because the city admitted that it had adopted the new policy in response to the trial court's decision enjoining the old one as unconstitutional. *Id.* at 1144. However, since it is not clear from the opinion whether the city's change in policy resulted from legislative or regulatory (*i.e.,* executive) action,[5] the Tenth Circuit's treatment of *19 Solid Waste Department Mechanics* does not necessarily support the union's position. Moreover, in a later decision, the very same Tenth Circuit granted vacatur in a case that was rendered moot by governmental action. In *McClendon v. City of Albuquerque,* 100 F.3d 863 (10th Cir.1996), the court described the city's actions as "responsible governmental conduct to be commended" and emphasized that the decision to grant or deny vacatur depends on the particular circumstances of each case. *Id.* at 868 (citations omitted). We agree with the District of Columbia Circuit that the holding in *19 Solid Waste Department Mechanics* "should be viewed as simply a specific instance where refusing vacatur served the public interest and not as establishing a general rule against vacatur where mootness results from voluntary governmental action." *National Black Police Ass'n,* 323 U.S.App. D.C. at 299, 108 F.3d at 353.

Finally, granting vacatur in the instant case serves the public interest. *See U.S. Bancorp,* 513 U.S. at 27, 115 S.Ct. 386. At issue in this case is the constitutionality of certain limitations on non-commercial speech. The Supreme Court has recognized that "[c]onstitutional adjudication [is] a matter of 'great gravity and delicacy,'" *Kremens v. Bartley,* 431 U.S. 119, 128, 97 S.Ct. 1709, 1714–15, 52 L.Ed.2d 184 (1977) (citation omitted), and that courts should generally avoid ruling on constitutional questions unless they have no other choice. *Id.; see Abney v. United States,* 451 A.2d 78, 82 n. 9 (D.C. 1982). Vacatur would be consistent with this

---

5. *See National Black Police Ass'n,* 323 U.S.App. D.C. at 299, 108 F.3d at 353 (citing *Cammermey-* *er v. Perry,* 97 F.3d 1235, 1239 (9th Cir.1996)).

doctrine. It would also fit within the rationale of *Munsingwear* because it would "ensure[ ] that a decision on a constitutional matter of great significance and current public interest does not remain in force unreviewed." *National Black Police Ass'n,* 323 U.S.App.D.C. at 300, 108 F.3d at 354; *see Munsingwear,* 340 U.S. at 41, 71 S.Ct. 104 (vacatur serves to eliminate the possibility of "a judgment, unreviewable because of mootness, from spawning any legal consequences").

■ The union maintains that vacatur would be contrary to the public interest because it would deprive the legal community of a "valuable precedent." This argument is without merit for at least three reasons. First, the trial court's order in this case was not published, and is therefore not readily available to be cited as precedent by anyone. *Compare National Black Police Ass'n,* 323 U.S.App.D.C. at 300, 108 F.3d at 354 (noting that the vacated opinion of the trial court will remain "on the books," thereby allowing future courts to consult its reasoning). Second, Superior Court holdings are never binding authority in other cases, even in the Superior Court itself. *See Customers Parking, Inc. v. District of Columbia,* 562 A.2d 651, 654 n. 5 (D.C.1989). Thus, apart from whatever persuasive force they may have in their reasoning, they have no real precedential value. Third, even if we were to assume that the decision in this case might have some precedential value, the Supreme Court has "never suggested, nor have we, that the precedential value of a decision alone renders vacatur inappropriate ." *American Family Life Assurance Co. v. FCC,* 327 U.S.App.D.C. 133, 139, 129 F.3d 625, 631 (1997).

### III

The judgment of the Superior Court is therefore vacated. This case is remanded with directions to dismiss the complaint.

*Vacated and remanded.*