## In re ESTATE OF Raymond JAMES.

### Ronald R. James, Appellant.

### No. 98–PR–973.

District of Columbia Court of Appeals.

Argued Dec. 1, 1999.

Decided Jan. 13, 2000.

Phyllis J. Dobin, with whom Eugene Ebert, Washington, DC, was on the brief, for appellant.

Peg Shaw, with whom Arnulfo Chapa, Washington, DC, was on the brief, for appellee.

Before STEADMAN, SCHWELB, and REID, Associate Judges.

REID, Associate Judge:

Appellant Ronald R. James, personal representative of the estate of Raymond James, challenges a ruling of the trial court determining that the expenses of estate administration do not take priority over payment of the statutory family allowance disbursement. We affirm the court's ruling. We conclude that D.C.Code § 19–101(a) gives the $10,000.00 family allowance disbursement priority over the payment of all costs of ongoing estate administration, including expenses for the maintenance of estate property and related attorney fees.

## FACTUAL SUMMARY

This matter arises from the administration of the estate of Raymond James. Mr. James died on September 4, 1995. Two months prior to his death, on July 26, 1995, he refinanced his home at 24 Tuckerman Street, N.W., in the amount of $97,500.00. He signed a 15–year promissory note requiring him to initiate monthly payments beginning September 1, 1995. However, he died without making the first monthly payment.

On December 1, 1995, Ronald R. James became the Personal Representative of the estate. His Petition for Probate listed assets totaling $149,490.95, and debts totaling $107,093.95. The assets included Mr. James' home at 24 Tuckerman Street, N.W., which was valued at $111,504.00. The Petition also listed $99,448.00 in secured debts that were directly attributable to the refinancing of Mr. James' home. Included in this $99,448.00 figure, were two monthly mortgage payments for September and October 1995, totaling $1,948.00.[1]

On January 29, 1996, the trial court ordered the payment of $10,000.00 to Marguerite Duque as a "family allowance" to care for Mr. James' minor child Alberto

---

1. In addition to the September and October 1995 mortgage payments, the Personal Representative subsequently made the following payments to the holder of the mortgage: 1/22/96—$4039.37; 2/1/96–$1029.85; 3/1/96–$985.00; 4/1/96–$985.00; 5/6/96–$985.00; 6/14/96–$985.00; 7/12/96–$985.00; 9/13/96–$93,364.24.

Duque. However the Personal Representative refused to pay the family allowance because, "there [was] no net estate for distribution after payment of all expenses of administration, funeral expenses, and the debts of the decedent." Mrs. Duque objected to the Personal Representative's January 1998 first and final account, contending that "[p]ursuant to D.C.Code § 19–101, Alberto Duque is entitled to receive a family allowance of $10,000.00."[2] In response, the Personal Representative argued that he has

> an obligation to deal fairly with all persons, including but not limited to heirs and creditors. *Although the family allowance is a preferred payment under District of Columbia law, it comes behind funeral expenses and expenses of administration.* It is suggested that all expenses of administration were appropriate under the circumstances.
>
> Contrary to Ms. Duque's contentions, this Estate has been fairly and properly administered. The course of action taken by the Personal Representative was a prudent one.... A "prudent person" would not in these circumstances have allowed the property to go to foreclosure.... Ms. Duque, through her attorney, was kept apprised of the proposed course of action and at no time objected.

(Emphasis added).

On March 19, 1998, the trial court concluded that

> the plain words of the Code cannot be evaded. The Council of the District of Columbia, in two different Sections of the law, addressed the matter of priority of the family allowance. The Council did not elect to give a higher status to fiduciary or legal compensation or to

anything other than funeral expenses. With such an explicit statute, the Superior Court has no discretion to create a new scheme of priorities.

Therefore, the trial court ordered "[the] estate [to] disburse [to Mrs. Duque] the sum of $10,000.00 in satisfaction of the family allowance." Furthermore, the trial court ordered that the remaining balance of the estate could be used to pay $3000.00 to the Personal Representative, and $854.00 for estate counsel.

On April 17, 1998, the Personal Representative filed a motion for stay and reconsideration. On May 28, 1998, the trial court denied the motion for reconsideration, but granted the stay, provided that the Personal Representative posted a bond in the amount of $10,000.00. In denying the motion for reconsideration, the trial court specifically stated that

> this Court has reviewed the entire record herein, with a view towards determining whether the Court had overlooked an important fact or legal authority. Having performed such a review, this Court is convinced that nothing new has been added that was not already briefed.
>
> For the sake of brevity, this Court will not repeat herein the details contained in its Opinion. That decision should stand, for all of the reasons argued again in the custodians Response to the instant motion, arguments which this Court accepts and adopts by reference.

The Personal Representative filed a timely appeal with this court.

## ANALYSIS

The Personal Representative contends that: 1) "the lower court incorrectly inter-

---

**2.** Section 19–101(a) & (b) expressly states:

(a) Upon the death of a person leaving a surviving spouse, the spouse is entitled to an allowance out of the personal estate of the decedent of the sum of $10,000 for the personal use of himself and of minor children. The allowance shall be paid in money, or in specific property at its fair value, as the surviving spouse may elect. *It is*

*exempt from all debts and obligations of the decedent, and is subject only to payment of funeral expenses not exceeding $1,500.* (Emphasis added).

(b) When there is no surviving spouse, the surviving minor children, if any, are entitled to the allowance provided for by subsection (a) of this section....

preted the District of Columbia Code ... [because] [b]asic [p]rinciples of [s]tatutory [c]onstruction [r]equire a[f]inding that [c]osts of [a]dministration [t]ake [p]riority over the [f]amily [a]llowance"; 2) legal fees associated with the administration of an estate have a legal priority over the family allowance[3]; and 3) "[d]uring the estate administration, Mrs Duque ... had explicitly consented to the sale of the house ... and [t]his consent ... should be deemed to ... constitute a waiver of the family allowance[.]" Mrs. Duque argues that: 1) "[p]ay[ment] of the family allowance [is] a duty mandated by statute, and Appellants completely lacked the authority to violate their nondiscretionary duties"; 2) "[t]he trial court did not abuse its discretion when it ordered the entire $10,000.00 family allowance to be paid out of the fees requested by counsel for the personal representative"; and 3) "[t]he trial court's factual finding that Ms. Duque did not waive the family allowance, should be upheld as it is not plainly wrong or without evidence to support it."

 In interpreting statutes, we look first to the plain meaning of the statutory language. *Ashton Gen. Partnership, Inc. v. Federal Data Corp.*, 682 A.2d 629, 636 (D.C.1996). *See also Guerra v. District of Columbia Rental Hous. Comm'n*, 501 A.2d 786, 789 (D.C.1985) ("It is a basic rule of statutory construction that courts ... must follow the plain and ordinary meaning of a statute because that is the meaning intended by the legislature."). Therefore, " '[a]bsent a clearly expressed legislative intention to the contrary, the language must ordinarily be regarded as conclusive .' " *Id.* (quoting *West End Tenants Ass'n v. George Washington Univ.*, 640 A.2d 718, 726 (D.C.1994) (other quotation omitted)). Furthermore, we "will not give effect to a plain language interpretation which is 'plainly at variance with the policy of the legislation as a whole.' " *Id.* at 636–37 (quoting *In re G.G., Jr.*, 667 A.2d 1331, 1334 (D.C.1995) (other citations and quotations omitted)).

*The Applicability of Section 19–101(a) to the Administration of the Estate*

This appeal turns on whether administrative expenses associated with managing an estate take precedence over the family allowance. The crux of the Personal Representative's argument is that, after properly paying the numerous fees and debts associated with the upkeep and subsequent sale of Mr. James' home, the estate was insolvent. Therefore, due to this insolvency, there were no funds available to satisfy the statutory family allowance payment to Mrs. Duque. This argument is inconsistent with the structure and language of § 19–101.[4]

 Section 19–101 (a) specifically states that the family allowance "is *exempt* from *all debts* and obligations of the decedent, and is *subject only* to the payment of funeral expenses not exceeding $1,500." (Emphasis added). On its face, therefore, this section establishes a very high priority indeed for the family allowance. As the Supreme Court stated in *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992),

---

3. Given our disposition, we do not address this argument.

4. To support his argument that the costs of administration take priority over the family allowance, the Personal Representative relies chiefly upon an Order issued in *Estate of Abron Franklin Patrick*, Adm. No. 2335–87 (D.C.Super.Ct.1988). However, as this court recently stated in *Lewis v. Hotel and Restaurant Employees Union, Local 25, AFL–CIO*, 727 A.2d 297, 302 (D.C.1999), "Superior Court holdings are never binding authority in other cases, even in the Superior Court itself. Thus, apart from whatever persuasive force they may have in their reasoning, they have no real precedential value." *See also* D.C. Ct.App. R. 28(h). To further support this argument, the Personal Representative relies upon 1 Victor S. Mersch, Probate Court Practice In The District Of Columbia § 161 (2d ed.1952). That text, however, engages in no real analysis of the issue before us and relies upon two distinguishable cases from other jurisdictions.

courts must presume that a legislature says in a statute what it means and means in a statute what it says there.... When the words of a statute are unambiguous, then this first canon is also the last; judicial inquiry is complete.

*Id.* at 253–54, 112 S.Ct. 1146. We are satisfied that, by enacting § 19–101, the Council of the District of Columbia intended to broadly protect the family allowance against all claims other than funeral expenses. Furthermore, the Council effectively conveyed this intention through its precise language. Thus, since the Personal Representative in this matter plainly used the estate funds to satisfy debts associated with the real property of the decedent, rather than first paying the statutory family allowance, the statute was violated.

It is true that the expenses of administering an estate may be regarded as a class different from debts and obligations of the decedent. Indeed, a rather glaring gap in this regard is presented in the language of § 20–906, which purports to instruct the personal representative as to priority of satisfaction of claims of an insolvent estate, but is silent as to the rank of administrative expenses. (Nor, so far as we have been able to discern, is the priority treatment given to administrative expenses addressed at any other point in the probate statutes.) But § 19–101 is the controlling statute and specifically provides that "if there is any conflict or inconsistency between this section and other provisions of this Part or any other law, this section controls."

■ We think that in providing for payment of a family allowance, the Council undoubtedly intended, as other legislatures have, that "the family allowance ... allow[s] the dependents of the [deceased] the money to provide themselves with the necessities of life which, in many cases, they had been receiving from the decedent before his death." *In the Matter of the Estate of Hutchinson,* 577 P.2d 1074, 1076 (Alaska 1978) (footnote omitted); *see also In the Matter of the Estate of Herbach,* 230 Mich.App. 276, 583 N.W.2d 541, 547 (1998). Since the family allowance is designed to reflect the public policy that the necessities of life for survivors should be covered without interruption, it vests immediately upon the death of the decedent, before the administration of the estate is completed. *See In the Matter of the Estate of Carriger,* 4 Kan.App.2d 594, 609 P.2d 685–86 (1980) (family allowance is "for the immediate needs of the surviving spouse and the decedent's minor children, if any, during a most difficult period of readjustment") (citations omitted). Unless the legislature states otherwise, the family allowance generally takes priority over other claims, except for funeral expenses.[5] We therefore conclude and hold that payment of the family allowance must have priority over the payment of any expenses involved with the ongoing administration of a decedent's estate.[6]

### The Waiver Issue

■ We next turn to the Personal Representative's contention that even if the statute applied, Ms. Dúque waived her right to the family allowance. In its March 19, 1998 Order, the trial court addressed this precise argument and stated that:

medical and hospital expenses, the family allowance, and other specified debts and other claims).

---

**5.** When legislatures intend to give other claims priority over the family allowance, that intent is reflected in the plain words of the statute. See *Teague v. Estate of Hoskins,* 709 So.2d 1373–74 (Fla.1998) (section 733.707 of the Florida statutes specifies that the personal representatives shall pay "costs, expenses of administration, and compensation of personal representatives and their attorneys' fees" before paying funeral expenses, debts and taxes,

**6.** We need not address here the status of those administrative expenses that must necessarily be incurred in the very opening of a decedent's estate, so that the family allowance may itself be paid.

[T]he critical problem arose in the risk that the fiduciary and counsel took in proceeding on a course that was destined to incur high legal fees, knowing that the family allowance had been demanded *and* that it had not been withdrawn. They assumed, at their peril, that Duque's silence in the wake of the letter of January 11, 1996 was somehow a total waiver of the family allowance— as opposed to a mere deferral of the time of payment.

The Court cannot find, *on these facts,* that Duque or her lawyer effectuated a reliable waiver of the family allowance even if they did not firmly respond to the critical letter from estate counsel.

(Emphasis added).

█ As this court stated in *Griffin v. United States,* 618 A.2d 114 (D.C.App. 1992), the trial court's findings of fact "are reviewed deferentially under the 'clearly erroneous' standard." *Id.* at 117. *See also* D.C.Code § 17–305(a). We see no reason to disturb the trial court's factual findings, and conclude that the trial court's judgment was not clearly erroneous or without evidence to support it.

For the reasons set forth above, the trial court did not err in ruling that § 19–101 clearly prioritizes disbursement of the family allowance over payment of all costs of estate administration, including but not limited to fiduciary and counsel compensation and expenses for the maintenance of estate property. Nor was the trial court's factual conclusion, that Mrs. Duque did not waive her right to payment of the family allowance, clearly erroneous or without evidence to support it. Hence, we affirm the judgment of the trial court.

*So ordered.*